Cecil ELLIS et al., Appellants,

v.

J. C. BRUCE et ux., Appellees.

No. 3216.

Court of Civil Appeals of Texas.

Eastland.

Jan. 20, 1956.

Rehearing Denied Feb. 17, 1956.

Carl M. Anderson, Sweetwater, J. O. Hughes, Fort Worth, for appellants.

Clyde Boose, Sweetwater, Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRISSOM, Chief Justice.

J. C. Bruce sued the brothers and sisters of A. T. Bruce and Mrs. Belle Bruce for the purpose of having construed the will of A. T. and Belle Bruce which, so far as is here pertinent, is as follows:

"That we, A. T. Bruce, and Belle Bruce, husband and wife respectively, of Nolan County, Texas, being of sound and disposing mind and memory, and understanding, in view of the uncertainty of human life, and for the purpose of making the best disposition of our worldly affairs, revoking all former wills, if any, by us heretofore made.

"It is our will and desire that the survivor of us, A. T. Bruce and Belle Bruce, as the case may be, shall with the rights and authority herein given, have all the estate of every description, real, personal, or mixed, community or separate property of either of us, which either of us, or both of us may own, to be used, occupied, enjoyed, conveyed and expended by, and during the life of such survivor as such survivor may desire, and that upon the death of such survivor any of such estate then remaining, shall pass and be immediately vested in J. C. Bruce, who is the Nephew of A. T. Bruce, one of the testators herein, and it is our desire that upon the death of the survivor of us that said J. C. Bruce, have and that full title be vested in him to all the property then remaining, real, personal and mixed, to be used as he may desire so long as he lives and at his death, then the remaining property, if any, shall pass to and be immediately vested as follows: One half shall be vested in the Brothers and Sisters and/or their heirs of A. T. Bruce and one half

shall be vested in the Brothers and Sisters and/or, their heirs of Mrs. Belle Bruce.

"We direct and it is our will, that no other action be had in the county court in relation to the settlement of our estate than the probating and recording of this our will, and the return of an inventory, appraisement, and list of claims of our estate, and when this is done title to our property shall pass to such survivor as before provided with full ownership, control, and disposition and upon the death of such survivor the remaining to pass to and be vested in the beneficiary we have designated."

The able trial court construed the will as devising to J. C. Bruce title to all the property that remained at the death of the surviving testator in fee simple, made, however, into a defeasible fee by provision that "the remaining property" should vest in the brothers and sisters of both testators. The court held that J. C. Bruce had the power to sell any of such property and transfer fee simple title thereto and that the remaindermen had no interest in the property that remained at the death of the surviving testator except that which still remained at the death of J. C. Bruce. Defendants have appealed.

Defendants contend the will should be construed as devising to J. C. Bruce only a life estate in the property undisposed of at the death of the surviving testator without power of disposition. Although plaintiffs have not appealed, they say that J. C. Bruce acquired a fee simple title to the remaining property but that, in any event, J. C. Bruce was authorized to dispose of any of the property in his lifetime and convey fee simple title thereto. Plaintiffs contend the provision that the property, "if any," that remained at the death of J. C. Bruce should vest in the brothers and sisters of both testators is precatory and that the use of the phrase "if any" in that connection shows an intention to give J. C. Bruce power to dispose of the property and convey fee simple title thereto in his lifetime. In connection with this contention,

we call attention to the fact that the writer of the will was rather free with the use of the words "if any". In the first paragraph it was provided that this will revoked all former wills, "if any". Surely, testators knew whether they had made prior wills. The provision following the grant to J. C. Bruce of the right to use the property as long as he lived that at his death the remaining property, "if any", should pass to the brothers and sisters of the testators, while possibly lending some support to appellees' contention, might equally as well have been intended to refer to a contemplated situation where only property such as livestock might remain at the death of the surviving testator but not be alive at the death of J. C. Bruce, or that such property might be perishable or wear out, or to a realization that nothing might be left at the death of the surviving testator. See 31 C.J.S., Estates, § 141, pp. 172, 173; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W. 2d 366, 370, W.R.; 31 C.J.S., Estates, § 51, pp. 66, 67.

■ We think it is highly significant that the testators provided that all of the property of both should go to the survivor "to be *used,* occupied, enjoyed, *conveyed and expended* by, and during the life of such survivor as such survivor may desire" and that immediately thereafter in the same sentence they provided that at the death of said survivor "any of the estate *then* remaining" should pass to J. C. Bruce "to be *used* as he may desire so long as he lives" and that at his death the "remaining property" should pass to the brothers and sisters of both testators in equal portions.

"When the same words are used in different parts of the will with reference to the same subject matter, it will be presumed that they were intended to have the same significance, unless there is something in the context to show use in a different sense." 44 Tex.Jur., 748, Sec. 183.

■ If the testators had intended to give J. C. Bruce the same title and authority they gave the surviving testator it is evident they knew how to do so by adding to

his right to use the property the right to convey and spend it. Said words were employed to designate the title, estate and authority granted the surviving testator but were noticeably absent from the grant of title and authority to J. C. Bruce. The fact that the surviving testator was expressly authorized not only to use, but also to occupy and enjoy and, further, to convey and expend and that immediately thereafter in the same sentence J. C. Bruce was authorized only to use the property manifests an intention to give to J. C. Bruce a lesser estate and less authority and, we think, makes evident the intention that J. C. Bruce was only to use the property that remained at the death of the surviving testator and not to convey or spend.

This intention is further indicated by the fact that the testators saw fit to explain that J. C. Bruce was the nephew of only A. T. Bruce, "*one* of the testators herein", and that they wanted J. C. Bruce, at the death of the survivor of the testators, to have all the "title" necessary to use all property that then remained as long as he lived but that at his death said property should vest in equal portions in the brothers and sisters of both testators.

"The authorities recognize a clearer indication of an intent to cut down a larger estate to a life estate where the remainder which would thus be created would pass to a person in the testator's line of descent than where such remainder would pass to a stranger, because the testator would have a stronger motive to prefer the former class than the latter." 33 Am.Jur. 479, Sec. 15.

We think such intention is emphasized by the last quoted paragraph of the will wherein it is provided that only those things required by law should be done and that then "title to the *property*" of both should pass to the survivor of the testators "as before provided *with full ownership, control and disposition*" and that upon the death of such survivor "the remaining to pass and vest in the beneficiary we have designated." We do not think it is of great importance that "beneficiary" instead of "beneficiaries" was used. Several beneficiaries were evidently contemplated, first the survivor of the testators and, if he left anything, then the nephew of A. T. Bruce as long as he lived and at his death the brothers and sisters of both testators. We conclude that the dominant purpose and intent manifested by the entire will was to give J. C. Bruce only a life estate without power to dispose of the principal or corpus and that the property which he "used" during his lifetime should go to the surviving brothers and sisters of both testators at his death. The language of the second paragraph authorized J. C. Bruce only to use the property. He was not authorized to convey or expend. Then, in the last paragraph the testators stressed the difference in the estate and power granted their survivor and J. C. Bruce by providing that "title" to all the "property" of both should pass to the surviving testator "as before provided with full ownership, control, and disposition—." It shoud be presumed that the testators in using those words to describe the estate and powers granted the survivor of the testators and, in the same sentence, describing the estate and power granted J. C. Bruce only as full title to use the property as he desired as long as he lived intended thereby to emphasize the difference in the estate and powers they intended to give the surviving testator and J. C. Bruce. Even without such emphasis in the last paragraph they had made such intention apparent by previously granting to said survivor a much greater estate and authority than was granted J. C. Bruce when they authorized the survivor to convey and expend all the property, in addition to using, occupying and enjoying it, and, immediately thereafter in the same sentence, authorized J. C. Bruce only to use what remained at the death of the surviving testator as long as he lived and provided that at his death "the remaining property" should pass to the brothers and sisters of both testators. It is significant in this connection that the language used to describe what was to be "used" by J. C. Bruce was "the property *then* remaining" and the words used to describe the property that should go to the

brothers and sisters of both testators at his death was "the remaining property." If they had intended for J. C. Bruce to have the power of disposition they could have in describing the property that was to go to the brothers and sisters appropriately used the words they had used in describing the property that was to be used by J. C. Bruce, that is, the property "then remaining". This conclusion is reinforced by the provision of the last quoted paragraph of the will that "title to our property shall pass to such survivor (of the testators) as before provided with full ownership, control and disposition." In describing the estate and authority of J. C. Bruce there was no provision that he was to have "title to our property", nor "ownership" thereof, nor right of "disposition". J. C. Bruce was granted only the "title" necessary to its use as long as he lived. A life tenant has some "title". The fact that testators expressly recited that the survivor of the testators should have title to the "property", ownership of the property and right to dispose of it but provided only that J. C. Bruce should have title necessary to use the property that remained at the death of the survivor compels the conclusion that testators did not intend for J. C. Bruce to have the "ownership" or right of "disposition".

■ We recognize the rule that a will should be construed as conferring on a devisee the greatest estate that the terms thereof permit and that when an estate is given in one part of a will in clear terms it cannot be taken away or cut down by subsequent terms not equally clear. But, such rules are subordinate to the rule that every part of a will should be harmonized and given effect if possible so as to enforce the dominant intention of the testators manifested by the entire will. That rule requires the interpretation stated. Calvery v. Calvery, Tex.Com.App., 122 Tex. 204, 55 S.W.2d 527, 529; 44 Tex.Jur. 691, 694, 712; Vogt v. Meyer, Tex.Civ.App., 169 S.W.2d 745; Hunt v. Carroll, Tex.Civ. App., 157 S.W.2d 429, W.D.; 31 C.J.S., Estates, §§ 32, 34, pp. 41, 42; Republic National Bank v. Fredericks, Tex.Sup., 283 S.W.2d 39, 43.

Our construction of the will finds support in the following decisions: Peden Iron & Steel Co. v. Lockett, Tex.Com.App., 131 Tex. 287, 115 S.W.2d 405, 406; Rae v. Baker, Tex.Civ.App., 38 S.W.2d 366, 368, W.R.; Cousins v. Cousins, Tex.Civ.App., 42 S.W.2d 1043, 1045, W.R.; Caples v. Ward, 107 Tex. 341, 179 S.W. 856, 858.

"The cardinal principle in the construction of wills, that the intention of the testator as determined from the entire will must prevail, is applicable in the determination of whether a particular will before a court for construction creates a life estate. Accordingly, the decision whether a life estate is or is not created by a particular will must necessarily depend upon the provisions of that specific instrument, and one case is, as a rule, of only little authority for another.

\* \* \* \* \* \*

"Obviously, a life estate is created where a will gives property to a person to be his during his natural life, or as long as he lives. A devise to one for 'life during widowhood', or as long as she remains the widow of the testator, or until she remarries, has often been held to create a life estate.

"A devise or bequest of the use, 'use and improvement' of property during the life of the devisee, or of the rents, profits, and income of the property for life, is in effect a devise of the property itself for life, but is not a devise of the fee." 33 Am.Jur. 470, 471.

■■ No particular words are required to create a life estate. Where the language of the will manifests the intention of the testator to pass to a devisee the right to "possess, use or enjoy property during the period of his life" a life estate is created. 28 Tex.Jur. 54. See 44 Tex.Jur. 830; 31 C.J.S., Estates, § 32, p. 41; Brown v. Wood, Tex.Civ.App., 239 S.W.2d 195, 201, W.R.; Medlin v. Medlin, Tex.Civ. App., 203 S.W.2d 635, 639, W.R.; Benson v. Greenville Nat. Exchange Bank, Tex. Civ.App., 253 S.W.2d 918, 919, RNRE;

Banks v. Banks, Tex.Civ.App., 229 S.W.2d 99, RNRE; 33 Am.Jur. 480, Sec. 17; Ragland v. Lowe, Tex.Civ.App., 283 S.W.2d 280, 282.

In Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, 367, 369, W.R., the portion of the will held to devise and bequeath only a life estate without power of sale was:

"'I give to my husband, R. M. Wagnon, all the residue of my estate, after my just debts are paid, both personal and real of every description whatever, to use, possess and control as his own individual property so long as he may live and at his death it is my will that the title and possession of my property pass to my children and their legal heirs respectively, share and share alike.'"

The court said:

"Consequently, when R. M. Wagnon probated his wife's will, and accepted the benefits thereof, such contract between them became irrevocable, and the rights of the children, *not only in their mother's estate*, but in all the community then existing, became fixed and indefeasible, subject, of course, to R. M. Wagnon's right 'to use, possess and control, as his own individual property,' said property during his lifetime. Moore v. Moore, Tex.Civ.App., 198 S.W. 659; Larrabee v. Porter, supra [Tex.Civ.App., 166 S.W. 395]; Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. [839] 841. That is to say, if said wills were mutual and reciprocal, R. M. Wagnon, upon the probate of his first wife's will, became vested with only a life estate in the entire community property, with remainder to their children. The wills gave him no authority to sell or dispose of same, but only to use, possess, and control it as a life tenant.

"If, on the other hand, said wills were not mutual and reciprocal, a life estate in only half of the community— that is the community interest of his first wife—passed to him, he owning the other half as his own separate estate."

In Lockett v. Wood, Tex.Civ.App., 84 S.W.2d 798, 799, 801, which was expressly approved and affirmed by our Supreme Court in Peden Iron & Steel Co. v. Lockett, 131 Tex. 287, 115 S.W.2d 405, the language in question was:

"'Item Fourth. I give, devise and bequeath all of my property, both real and personal, that I may die possessed of, of every nature and kind, after payment of my just debts, to my beloved wife, Alma Hosea Wood, to have and to hold the same for and during her natural life, to use as she sees proper, with the remainder over and after her death to our four children * * *.'"

Relative thereto the court said:

"Item fourth next plainly creates a remainder over, after the termination of the widow's life estate, to the four children * * *." See also 31 C.J.S., Estates, §§ 137, 141, pp. 164, 173; 69 C.J. 531, 536; Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 176, reversed on other grounds, Tex.Com. App., 57 S.W.2d 75, 89 A.L.R. 571; Medlin v. Medlin, Tex.Civ.App., 203 S.W.2d 635, 639, W.R.; Morris v. Eddins, 18 Tex.Civ.App. 38, 44 S.W. 203, W.R.; Hughes v. Beall, Tex.Civ.App., 264 S.W. 171, W.R.; Cousins v. Cousins, Tex.Civ.App., 42 S.W.2d 1043, 1045, W.R.; Burch v. McMillin, Tex. Civ.App., 15 S.W.2d 86, 90.

We are forced to the conclusion that the purpose and intention of the testators was that J. C. Bruce be given a life estate in the property that remained at the death of the survivor of the testators and that their brothers and sisters should receive the principal or corpus thereof at his death. 31 C.J.S., Estates, § 141, pp. 172, 173; Diller v. Kilgore, 135 Kan. 200, 9 P.2d 643, 646; 33 Am.Jur. 480, Sec. 17. The conclusion of the trial court as to the estate devised to the survivor of the testators is correct. In that respect the judgment is affirmed, otherwise, it is reversed and judgment is rendered for appellants. (Italics and emphasis are ours.)