**Thomas P. READ, Jr., et al., Appellants,**

v.

**Ruth GEE, Independent Executrix, et al., Appellees.**

No. 18070.

Court of Civil Appeals of Texas, Fort Worth.

April 5, 1979.

Rehearing Denied May 3, 1979.

---

William A. Nobles, Decatur, for appellant Thomas P. Read, Jr., Independent Executor of the Estate of Ruth Cole, Deceased.

Melton & Hamric and Wayne A. Melton, Dallas, for individual appellants.

Andress, Woodgate & Lodewick, and William Andress, Jr., Dallas, Stark, Barnhart & Moore, and Richard S. Stark, Gainesville, for appellees.

## OPINION

MASSEY, Chief Justice.

The question presented by the appeal is presence or absence of ambiguity or uncertainty in the provisions of the will of Ruth Cole, deceased. If there was ambiguity or uncertainty parol evidence would be admissible for the purpose of ascertaining the intent of the testatrix in the construction of the will (distinguishable from evidence which would serve to supply only sufficient background information). If there was not ambiguity or uncertainty such evidence by parol would be inadmissible.

Summary judgment was granted upon the motion of defendant Ruth Gee, individually and as independent executrix of the estate of Laura Freeland, upon the holding of the trial court that there was not ambiguity or uncertainty in the language of the will; that by a construction of the language alone, unaided by any evidence, the interest of Ruth Gee, in her individual capacity and as independent executrix, included right to take all and every interest as beneficiary to the estate of Ruth Cole. Therefrom Thomas P. Read, Jr., et al., have appealed.

We reverse the judgment and remand the cause for trial at which parol evidence, if presented, should be admitted and considered in the construction of the Cole will.

The material portions of the Cole will appear below; emphasis is supplied by the court:

I, Ruth Cole, resident of Paradise, Wise Co. Texas declare this to be My Will. I direct that all my just debts be paid by my Executor, herein after named, as soon after my death as may conveniently be done.

2

After the payments of all my just debts I give, devise and bequeath *all of my property* and interests of every kind and character and from whatever source derived to my sister, *Laura Freeland, if deceased, to Ruth Gee*, her daughter, (author's note; this could be either a period or a comma) nephews & nieces, namely Thos P. Read Jr. Carl Read Jr. W. T. Read, Tennessee Sendok, Doris Bogart, Marie Elliott, Iva Ruth Rhodes.

3

(Not copied; merely named independent executor, etc.).

4

*Laura Freeland, if deceased, to Ruth Gee $2,000,—*

Thos P Read Jr—200 acres of Johnson place.

W. T. Read—134 acres of Home place.

Carl Read Jr—97 acres bottom land.

Tennessee Sendok, Thos P Read Jr. W. T. Read, Doris Bogart, equal shares of Savings Bonds.

Marie Elliot (sic) and Iva Ruth Rhodes $100.00 each.

House & Lots to Thos P. Read Jr. contents of which are to be divided among nephews and nieces.

Haynes place 65½ acres to be sold for support and expenses as needed in Hospital or Nursing care.

Provided my bank account does not exceed expenses, 60 acres of royalty can be disposed of.

(There was no residuary clause in the will.)

The will was a holographic will which was entirely in the handwriting of Mrs. Cole, the testatrix.

At time Mrs. Cole made the will all her brothers were deceased; (likewise all her sisters except Laura Freeland). Thomas P., and T. Read were surviving sons of Thomas P. Read, Sr., and Tennessee Sendok and Doris Bogart were their sisters; Carl Read, Jr., was son of Carl, Sr., deceased; Marie Elliott and Iva Ruth Rhodes were children of Walter Read, deceased. The children of three deceased brothers and one deceased sister were not mentioned by the will. Ruth Gee was one child of Laura Freeland, the sister Mrs. Cole named in her will. All the "nephews and nieces" mentioned by the will were common both to Mrs. Cole and Mrs. Freeland.

By the construction given the will by the trial court, on the theory that its provisions were plain so that the aid of parol evidence was neither necessary nor proper, paragraph 1 provided, in substance (according to the trial court):

"I give, devise and bequeath all of my property . . . to my sister Laura Freeland, (and) if (she be) deceased, to Ruth Gee, her daughter, (and others of my) nephews & nieces, namely . . .."

Treated as surplusage in the construction by the court was the following language in paragraph 4:

"Laura Freeland, if deceased, to Ruth Gee $2,000,—".

Or, alternatively, the court construed it to say:

"(if) Laura Freeland (be) deceased, to Ruth Gee $2,000,—".

and also the language which follows relative to nephews and nieces.

From April 9, 1976 when Thomas P. Read, Jr., (as independent executor of the estate of Ruth Cole) filed his suit for declaratory judgment in this case, he, individually as well as an independent executor, along with all the other "nephews and nieces" (except Ruth Gee) named as such by the Cole will, have taken the position that there was necessity for a construction of the language and provisions of the will. Indeed, to secure that was the objective of the suit for declaratory judgment; and this was the same case in which Ruth Gee, (in her individual capacity coupled with her capacity as independent executrix of the estate of Laura Freeland, deceased), sought and secured the summary judgment. Thomas P. Read, Jr., (as independent executor of the estate

of Ruth Cole), did obtain a declaratory judgment, not what was desired nor by the kind of trial alleged as necessary, but by the summary judgment sought by Ruth Gee. That judgment was not satisfactory to Reed either in the capacity in which he brought suit nor to himself nor to any of his interested cousins, all of whom were parties to the suit. They have ever been insistent that the court should hear and consider parol evidence bearing upon the meaning and intent of the language used in the holographic will.

In *Kennard v. Kennard*, 84 S.W.2d 315, 320 (Tex.Civ.App.—Waco 1935, writ dism'd), Justice Alexander, later Chief Justice of our Supreme Court, wrote the following:

"Where the meaning of a will is doubtful, evidence of the circumstances surrounding the testator are admissible so as to put the court as nearly as possible in the same position as was the testator at the time the language was used, for the purpose of enabling the court to read the will in the light of the circumstances under which it was written and thereby discovering the meaning attached by the testator to the words used by him. Such evidence is admissible only for the purpose of explaining the meaning of the language used in the will, for the intent of a testator must be ascertained from the meaning of the words used by him in his will and from those words alone. In other words, the intent must always be drawn from the will, but never the will from the intent. As it is sometimes expressed, it may be shown in certain cases what was intended by the testator by what he actually said, but it is always incompetent by such extraneous circumstances to show what the testator intended to say but did not say. Before such evidence is admissible there must appear on the face of the will sufficient indication to justify the application of the evidence, and the intention as evidenced by such extraneous circumstances must be in harmony and not in conflict with the language of the will. It is never proper to admit extrinsic evidence as to the direct oral declaration of the testator for the purpose of supplying an intention that is not reasonably and legitimately deducible from or that is contrary to or inconsistent with the language used in the will. (Citing many cases)".

■ The cardinal rule to be followed in construing a will is to seek and enforce intention of the testator, and if intention of testator be not clearly expressed by particular language used it may be found by looking to provisions of the will as a whole and to circumstances surrounding its execution. *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579 (1955); *Atkinson v. Kettler*, 372 S.W.2d 704, 710 (Tex.Civ.App.—Dallas 1963, aff'd at 383 S.W.2d 557, (1964)); 95 C.J.S. 767 "Wills" § 592 (1957), "(Intention of Testator)—Surrounding Facts and Circumstances".

■ In the instant case, particularly relevant to the language of the will at its paragraph 4, is the legal requirement that in attempting to reconcile apparent inconsistencies a later clause in a will must be construed in harmony with an earlier clause if such construction can fairly be given. 95 C.J.S. 866 "Wills" § 621 (1957), "(Separate Parts or Clauses)—Inconsistent and Repugnant Provisions.

■ In the event of necessity there may be reference to other parts of a will for explanation of a different part where there is a provision by language of doubtful meaning. 95 C.J.S. 864 "Wills" § 620 (1957), "(Separate Clauses or Parts)—Construction as Whole", sub. (b) "Reference to Other Parts."; and under sub. (d) "Consideration of Invalid or Inoperative Parts" is to be observed that under the general rule, even as applied to a void or inoperative part of a will, such may be considered in the attempt to ascertain the testator's intention in the valid part sought to be construed.

■ Bearing in mind all of the foregoing we are of the opinion that there is ambiguity and uncertainty in the will. Indeed, contrary to the construction of the trial court, the will could as well be read so that

it was subject to a construction according to Thomas P. Read, Jr., et al. as follows:

"I give, devise and bequeath all of my property . . . to my sister Laura Freeland . . . (and to) nephews & nieces, namely . . . . (to) Laura Freeland . . . $2,000.00—(,) Thos. P. Read, Jr.—200 acres of Johnson place (,) . . . ."

In other words, we have concluded that there is uncertainty by the language used by Mrs. Cole in drafting her will as to whether she intended to give the whole of her estate to her sister, Laura Freeland, in the event Mrs. Freeland should survive her; or, whether—in the event Laura Freeland did not survive her—to Ruth Gee in her place and stead (a contention which does not appear to have ever been made), and/or to Ruth Gee along with her cousins as named in the will (all as might be qualified by the very questionable language of paragraph 4 of the will relative to which there is not express disposition of any kind). Again, observing the language in paragraph 4, "Laura Freeland, if deceased, to Ruth Gee", coupled with the list of Mrs. Cole's same nephews and nieces named in paragraph 2, a possible construction might be that paragraph 2 provided (in the event Mrs. Freeland predeceased Mrs. Cole), that all nephews and nieces named by the will participate—on basis of share and share alike. (Mrs. Freeland was alive at the death of Mrs. Cole; she afterward became deceased before the litigation over the Cole will was instituted.)

This court also had for consideration a motion to dismiss as party to the appeal Thomas P. Read, Jr., in his capacity as Independent Executor. To do so would leave him in the case only in his individual capacity but not as executor of the Cole will. On presentation, adverse counsel conceded that he really didn't care one way or the other whether there be such dismissal or not. Because of the concession, the motion is dismissed.

We reverse the summary judgment because there were issues of fact which should have been tried. The court was correct in denying such to Thomas P. Read, Jr., et al., but erred in granting the judgment to Ruth Gee, et al.

Judgment is reversed, with the cause remanded for trial.

HUGHES, J., not participating.