Ruth GEE, Independent Executrix, et al., Petitioners,

v.

Thomas P. READ, Jr., et al., Respondents.

No. B–8539.

Supreme Court of Texas.

July 23, 1980.

Rehearing Denied Oct. 8, 1980.

William Andress, Dallas, Stark, Barnhart & Moore, Richard Stark, Gainsville, for petitioners.

Wayne A. Melton and Bryan D. Hamric, Dallas, William A. Nobles, Decatur, for respondents.

GARWOOD, Justice.

This is a suit to construe the will of Ruth Cole. The district court granted summary judgment for the defendant Ruth Gee, Independent Executrix of the Estate of Laura Freeland, Deceased, on the basis that the will unambiguously left all of Ruth Cole's property to her surviving sister Laura Freeland. The court of civil appeals reversed and remanded for trial on the basis that the will was ambiguous. 580 S.W.2d 431. We affirm the judgment of the court of civil appeals.

Ruth Cole's will is entirely in her own handwriting and provides as follows:

[Page 1]

Aug 8, 1970

I, Ruth Cole, resident of Paradise, Wise
Co. Texas declare this to be my Will.
I direct that all my just debts be paid
by my Executor, herein after named,
as soon after my death as may
conveniently be done.

2

After the payments of all my just debts I give, devise and bequeath all of my property and interests of every kind and character and from what-ever source derived to my sister, Laura Freeland, if deceased, to Ruth Gee, her daughter, nephews & nieces, namely Thos. P. Read Jr. Carl Read Jr. W. T. Read Tennessee Sendak, Doris Bogart, Marie Elliott, Iva Ruth Rhodes.

3

I name and appoint, Thos P Read Jr. Independent Executor of this Will and my estate and direct that no bond or other security shall ever be required of him as Executor and that no action ever be required to be taken in the Probate Court relative to my estate except only to probate this will and to file proper inventory and appraisement as may be required by law.

[Signed] Ruth Cole

[Page 2]

4          Aug 8, 1970

Laura Freeland, if deceased, to Ruth Gee $2,000, —
Thos P Read Jr — 200 acres of Johnson place.
W. T. Read — 134 acres of Home place.
Carl Read Jr — 97 acres bottom land.
Tennessee Sendak, Thos P Read Jr. W. T. Read Doris Bogart, equal shares of Savings Bonds.
Marie Elliot and Iva Ruth Rhodes $100.$\frac{00}{}$ each.
House & lots to Thos P. Read Jr.
Contents of which are to be divided Among nephews and nieces.
Haynes place 65 1/2 acres to be sold for support and expenses as needed in Hospital or nursing care.
Provided my bank account does not exceed expenses, 60 acres of royalty can be disposed of.

[Signed] Ruth Cole[1]

Ruth Cole died April 12, 1972. Laura Freeland died December 14, 1973, and Ruth Gee qualified as independent executrix of her estate. Thomas P. Read, Jr., as independent executor of Ruth Cole's estate, brought suit for a declaratory judgment against Ruth Gee, individually and as executrix of Laura Freeland's estate, and against himself individually, W. T. Read, Carl Read, Jr., Tennessee Sendak, Doris Bogart, Marie Elliott, and Iva Ruth Rhodes. Ruth Gee filed an answer, a cross action, and a motion for summary judgment in which she alleged that Ruth Cole's will unambiguously gave all of her property to Laura Freeland if Laura Freeland survived her. Thomas P. Read, Jr. individually and the named defendants other than Ruth Gee [hereinafter "the Read nephews and nieces"] filed an answer, a cross action, and a motion for summary judgment alleging that the will was ambiguous and extrinsic evidence should be admitted to aid in interpreting it. They alternatively alleged that the will unambiguously made diverse specific gifts by its section 4 to Laura Freeland and the Read nephews and nieces, and by its section 2 divided the residuary estate equally among Laura Freeland and the Read nephews and nieces, with Ruth Gee being a contingent beneficiary only of Laura Freeland's $2,000 specific gift and her one-eighth share in the residue.

Ruth Cole was a widow and had no children. Laura Freeland was her sister, and Ruth Gee is Laura Freeland's daughter. The others mentioned in the will, each of whom also survived Ruth Cole, are the seven Read nephews and nieces, namely: Thomas P. Read, Jr., W. T. Read, Tennessee Sendak, and Doris Bogart, children of Ruth Cole's brother T. P. Read; Iva Ruth Rhodes and Marie Elliott, children of her brother Walter Read; and Carl Read, Jr., son of her brother Carl Read. Ruth Cole had six brothers and two sisters, but Laura Freeland is the only sibling shown by this record to have survived her.[2] Each of her brothers

---

1. Each word on each line is as written by Ruth Cole. Some of the punctuation and capitalization in the will is difficult to decipher. However, the typewritten version given above seems to be correct and the parties have not called our attention to any material dispute between them in this regard. Both sides now admit that the word "daughter" in section 2 is followed by a comma, not a period.

2. The record shows that four of her brothers died years before the will was made and one (Harry Read) apparently after the will was made but prior to Ruth Cole's death. Her other

and sisters had one or more children, and there are numerous nephews and nieces of Ruth Cole not mentioned in the will. At least two of these (one of Laura Freeland's sons and the daughter of Ruth Cole's brother Harry Read) survived Ruth Cole, but the record is silent as to whether any or all of the other unmentioned nephews and nieces were living at her death.

Ruth Cole's age at death is not precisely shown, but she clearly was elderly. There is no direct evidence as to her health, but she apparently was not confined to her home or a hospital or nursing facility. Laura Freeland was 89 when she died. Before Ruth Cole's will she had suffered a stroke which partially paralyzed her. She lived with Ruth Gee, and was taken care of by a full-time "sitter." She was able to be in a wheelchair, but seldom left the house.

The Read nephews and nieces submitted the affidavit of Mrs. Carl Read, Jr. which asserted that Ruth Cole had an especially close relationship with these particular nephews and nieces. Thomas P. Read, Jr. and Mrs. Carl Read, Jr. furnished her with transportation and assisted her in conducting her business and personal affairs. Thomas P. Read, Jr. had a joint checking account with her with right of survivorship, was the only other authorized entrant to her safe deposit box, performed all her house repairs and maintenance work, and used the Johnson place mentioned in the will for grazing livestock. W. T. Read used the land called the "home place" in the will for grazing livestock. The bottom land referred to in the will is a long and narrow strip of land adjoining a similar strip owned by Carl Read, Jr. Iva Ruth Rhodes and Marie Elliott lived near Ruth Cole and they visited her often; she was close to them and to Tennessee Sendak and Doris Bogart. Laura Freeland had moved often; Ruth Cole did not approve of her marriage or of her sale of family land. Ruth Cole, knowing of Laura Freeland's stroke and that she

lived with Ruth Gee, wanted Laura Freeland to have enough money for burial, and considered $2,000 adequate for this purpose.

Ruth Gee contested some of the facts asserted by this affidavit, including the names of some relatives and the circumstances surrounding Laura Freeland's sale of the family land. She further contended that Laura Freeland was never a resident of any nursing home or hospital. Ruth Cole visited Laura Freeland often, and they had a close relationship.

The Read nephews and nieces also offered the affidavit of Norman Rowe, a lessee and an acquaintance of Ruth Cole, who stated that she told him she intended to leave the "home place" to W. T. Read, the "Johnson place" to Thomas P. Read, Jr., and only a sum of money to Laura Freeland, because she was ill, but that she would not leave her any land because she felt she would not keep it in the family. He once suggested that she give the land to her nephews while she was alive to "keep it out of court and keep some lawyer from getting most of it. She told me she did not need to do that, that she had set it all down the way she told me and that everything was taken care of." In an affidavit offered to support Ruth Gee's interpretation of the will, Laura Freeland's "sitter" stated that Ruth Cole occasionally expressed to her the wish that she could do more for her sister.

On the basis that the will unambiguously gave all of Ruth Cole's property to Laura Freeland, the district court granted Ruth Gee's motion for summary judgment and denied the motion for summary judgment of the Read nephews and nieces. The court of civil appeals reversed and remanded for trial, holding that the will was ambiguous and that "parol evidence, if presented, should be admitted and considered in the construction of the Cole will." 580 S.W.2d 431 at 432.

sister predeceased Ruth Cole but the record does not show when. The record is silent as to

whether her brother T. P. Read survived her.

The primary object of inquiry in interpreting a will is determining the intent of the testator. *Powers v. First National Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273, 281 (1942). This object is limited, however, by the required formalities of the Statute of Wills. The policy behind this limitation was explained in *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 888–89 (1960) as follows:

The intent must be drawn from the will, not the will from the intent.

.    .    .    .    .

While the Texas decisions are liberal in the construction of wills, and the courts of Texas go a long way in the relaxation of the rules of construction of wills to arrive at the manifest intention of the testator, especially when the will is written by a layman, courts are limited to the intent found within the will itself and may not redraft the will. . . . The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended something not set out in, or different from, that set out in his will.

In order to determine testator's intent, the will must be construed as a whole, so as to give effect to every part of it. *Republic National Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39, 43 (1955).

The interpretation urged by the Read nephews and nieces is that section 4 is a series of specific gifts, each applicable whether or not Laura Freeland survives, but if she does not survive, the $2,000 bequest to her goes to Ruth Gee. Section 2 is essentially a residuary clause, dividing the remaining estate among Laura Freeland and the seven Read nephews and nieces, with Ruth Gee to take Laura Freeland's one-eighth share if she is deceased. Ruth Gee, on behalf of Laura Freeland's estate, contends that section 4 (or the gifts made thereby) applies only if Laura Freeland does not survive. Section 2 leaves all of the estate to Laura Freeland, if surviving. If she is deceased, it divides the property (or that not disposed of in such event by section 4) among Ruth Gee and the seven Read nephews and nieces.

In each of sections 2 and 4 the crucial words "Laura Freeland, if deceased," are followed by the disputed parts of the will. The essence of the controversy is what portion of the following language is controlled by the phrase "if deceased." This phrase imposes a condition either only on the immediately following gift to Ruth Gee or on all the following gifts. In section 2, does the condition imposed by the phrase "if deceased" apply *only* to the words "to Ruth Gee, her daughter," or does it apply to the entire balance of section 2? In section 4, does "if deceased" apply *only* to the words "to Ruth Gee" or to all the remaining gifts made in section 4?

Ruth Gee relies on the principle favoring that construction which gives the largest possible estate, with the earliest vesting, to the "first taker." This doctrine is normally applied to determine the quality or duration of the estate given, such as whether the gift is a life estate or fee simple. *See, e. g., Rogers v. Nixon*, 275 S.W.2d 197 (Tex.Civ.App.—San Antonio 1955, writ ref'd). The doctrine is of virtually no help in determining whether in section 2 the phrase "if deceased" applies to all the rest of the section so as to make Laura Freeland its sole beneficiary if she survives, or whether it applies only to the words "to Ruth Gee, her daughter," so as to give undivided interests to Laura Freeland and the seven Read nephews and nieces there named, with Ruth Gee to take Laura Freeland's share if she is deceased. Moreover, the doctrines relied on by Ruth Gee are subordinate to the rule "that every part of the will should be harmonized and given effect to, if it can be done." *Calvery v. Calvery*, 122 Tex. 204, 55 S.W.2d 527, 529 (1932); *Wallace v. First National Bank of Paris*, 120 Tex. 92, 35 S.W.2d 1036 (1931); *Ellis v. Bruce*, 286 S.W.2d 645, 649 (Tex.Civ. App.—Eastland 1956, writ ref'd n. r. e.). Section 2 is susceptible of the construction urged by the Read nephews and nieces, and we cannot say that Ruth Gee's construction

is necessarily preferable. We reject Ruth Gee's contentions that section 2 is an unambiguous gift of the entire estate to Laura Freeland, if she survives, and that the meaning of such section should be ascertained without reference to section 4.

Ruth Gee also contends that section 4 of the will, or so much thereof as purports to make devises or bequests, comes into play only if Laura Freeland is deceased. This contention is necessarily predicated on the assumption that the words "if deceased" in the first line of section 4 apply to all the remaining specific gifts therein rather than merely to the immediately following words "to Ruth Gee." The words "Ruth Gee" are not followed by a comma, and there is no period, but rather a comma and a dash, after the figures "$2,000." This lends some support to the construction urged by Ruth Gee which would apply the words "if deceased" to all the remaining gifts thereafter made in section 4. On the other hand, section 4 as a whole is divided into separate paragraphs each dealing with different particular property or sums of money. A new line is started after the figures "$2,000,—," although such figures are at the beginning of the second line of section 4. The gifts following are each in different paragraphs separated from each other by periods, and the first five of these paragraphs each begins with the name of the beneficiary or beneficiaries of the particular property being dealt with, just as Laura Freeland's name begins the first paragraph of section 4. All this suggests that the paragraphs in section 4 are independent of each other, so that the subsequent paragraphs are not controlled by the first, and that the first paragraph is intended as a bequest of $2,000 to Laura Freeland, with Ruth Gee to take

the $2,000 if Laura Freeland is deceased. Section 4 does not unambiguously condition its gifts to the Read nephews and nieces on Laura Freeland's having predeceased the testatrix. It is plainly susceptible of the construction urged by the Read nephews and nieces.

We hold that Ruth Cole's will, considered as a whole, does not on its face unambiguously leave all her property to Laura Freeland if surviving. Nor do the summary judgment proofs establish such to be the intent of the will as a matter of law.[3] The court of civil appeals thus correctly held that the trial court erred in granting Ruth Gee's motion for summary judgment. *Tips v. Yancey,* 422 S.W.2d 759, 762 (Tex.Civ. App.—Dallas 1967), *writ ref'd n. r. e.,* 431 S.W.2d 763, 764 (Tex.1968). The Read nephews and nieces did not file either a motion for rehearing in the court of civil appeals or an application for writ of error, and they do not contend in this court that the will unambiguously makes the gifts contended for by them. Hence we do not have before us the question of whether the court of civil appeals should have rendered judgment for the Read nephews and nieces. Accordingly, the judgment of the court of civil appeals is affirmed.

POPE, J., writes dissenting opinion in which McGEE, J., joins.

GREENHILL, C. J., not sitting.

POPE, Justice, dissenting.

I respectfully dissent. The testatrix first made it clear that she wanted her debts paid. She next made it clear that she left "all of my property and interests of every kind and character and from what-ever source derived to my sister, Laura Freeland

---

**3.** Ruth Gee's contention that the Read nephews and nieces are precluded from contending that the will is ambiguous because they moved for summary judgment is without merit. *See Tips v. Yancey,* 422 S.W.2d 759, 762 (Tex.Civ.App. —Dallas 1967), *writ ref'd n. r. e.,* 431 S.W.2d 763, 764 (Tex.1968); *Tigner v. First National Bank of Angleton,* 153 Tex. 69, 264 S.W.2d 85 (1954); *Miller & Freeman Ford, Inc. v. Greater Houston Bank,* 544 S.W.2d 925, 926 (Tex.1976). Moreover, the Read nephews and nieces specif-

ically pleaded the will had "areas of doubtful meaning, uncertainties and indefinite expression . . . and that evidence should be heard and considered by the trier of fact to resolve such apparent ambiguities." Similar allegations were contained at the beginning of their motion for summary judgment, which then stated that only if the court concluded the will could be construed without proof of extrinsic facts and circumstances, then it should construe the will in their favor.

. . . ." This expression of intent was to leave "all of my property," "every kind and character," and "from what-ever source" to one named person. She then stated what she wanted done with her estate if Laura Freeland was deceased.

Since Laura Freeland survived the testatrix, any ambiguity in the subsequent portions of the will become immaterial, because Laura Freeland got it all. The majority reads out of the will the intent of the testatrix concerning her estate if her sister Laura predeceased her. Surely the testatrix did not intend to leave to Laura Freeland her property if she had already predeceased her. The alternative is that she intended leaving all to Laura Freeland, but "if deceased," and only in that event, to the others. To read the will any other way is to read the words, "if deceased," out of the will. The same words were used in the fourth paragraph with the same meaning and for the same purpose. She stated:

"Laura Freeland, if deceased, to Ruth Gee $2,000,—" and ten other named persons with specified devises or bequests. It is only when we look at what the testatrix intended if Laura Freeland predeceased her that we find any ambiguity. We need not ever reach that ambiguity, because the condition never occurred. Mrs. Freeland not having yet died, received all the property upon the death of the testatrix.

The majority opinion invites living persons to make a new will for the deceased testatrix. It has read the will in a way that defeats the intent of the testatrix, that defeats the first taker, that finds the words of the will from the intent rather than the intent from the words of the will, that deletes and ignores the words "if deceased" which are words of a condition which did not happen, and that creates rather than avoids an ambiguity.

I would affirm the judgment of the trial court.

McGEE, J., joins in this dissent.