COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NOS. 2-02-312-CV
        2-02-313-CV
 
SHANNON EMILY PARKER                                                           APPELLANTS
AND KELLI PARKER
V.
CHRISTY LYNN PARKER                                                              
APPELLEES
AND ROBERT CLINTON PARKER
------------
FROM PROBATE COURT NO. 1 OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
Appellants Shannon Emily Parker and
Kelli Parker appeal from the probate court's denial of their motions for summary
judgment and the court's corresponding ruling granting appellees Christy Lynn
Parker and Robert Clinton Parker's motions for partial summary judgment. In
three issues, appellants complain that the probate judge was without power to
rule upon the parties' summary judgment motions due to a previous oral recusal
and that if the probate judge possessed such power, he erred by denying
appellants' motions and granting appellees' motions. We affirm.
II. Factual and
Procedural History
These are companion cases dealing
with the disposition of the estates of Charles F. Roeser ("Roeser")
and Maxine Shannon Pavelic ("Pavelic"), respectively. The cases
involve the construction of Roeser's and Pavelic's wills and whether or not
adopted great-grandchildren are eligible beneficiaries of testamentary trusts
created under them.
On July 27, 1999, Chase Bank of
Texas ("Chase"), acting as trustee of the trusts created under the
respective wills of Roeser and Pavelic, filed an "Original Petition for
Declaratory Judgment" under two cause numbers in Probate Court Number One
of Tarrant County.(1) Chase sought a declaration
in each case construing the terms of the testamentary trusts created under the
respective wills and a determination of the interested parties' rights under
those trusts. The interested parties named by Chase who are now parties to this
appeal include appellants, the biological daughters of Emily Roeser Parker and
grandchildren of Roeser and Pavelic, and appellees, the adopted children of
Earle Whitney Parker, Emily Roeser Parker's son, and adopted great-grandchildren
of Roeser and Pavelic.
Appellants and a third sibling,
Patrick Allison Parker,(2) answered Chase's
petitions and asserted cross-claims against appellees alleging that appellees
possessed no rights to the trusts created under the Roeser and Pavelic wills
because of their status as adopted children. Appellants requested a judicial
declaration that appellees have no interest in either estate. On May 12, 2000,
appellees answered and filed counterpetitions for declaratory judgment, in which
they argued that the probate court should, as a matter of law, "construe
the language of the Decedent's Will in such a way as to treat all heirs of
Decedent's children the same, whether such heirs are adopted or not." On
the same day, appellees also filed motions for partial summary judgment
requesting the court to hold that the Pavelic trusts did not exclude adopted
great-grandchildren.
Thereafter, appellants filed
motions for summary judgment on their cross-claims against appellees, asserting
that summary judgment evidence presented by appellants proved as a matter of law
that appellees possessed no interest in either estate and that there was no
evidence either Roeser or Pavelic intended for adopted great-grandchildren to
inherit under the terms of their wills. The evidence attached to appellants'
motions for summary judgment includes: Pavelic's October 15, 1971 will, an
October 31, 1971 handwritten codicil to Pavelic's will, a March 25, 1977 second
codicil to Pavelic's will, a July 6, 1978 third codicil to Pavelic's will,
Roeser's February 19, 1947 will, a February 19, 1947 first codicil to Roeser's
will, and a February 4, 1949 second codicil to Roeser's will, all of which bear
the seal of the County Clerk of Tarrant County, Texas.
With the competing summary judgment
motions pending before the probate court, the parties set forth the following
agreed stipulation of facts regarding the estate of Roeser, which is part of the
clerk's record:

        
 Charles F. Roeser (hereafter Decedent) died in 1949. His probated Will
 consisted, collectively, of a 1947 will and 1947 and 1948 codicils. Item Four
 of the Will created three trusts, one for the Decedent's wife, Maxine Shannon
 Roeser, and one for each of his two daughters, Emily and Ellen. The Will
 provided that if the Decedent's wife failed to appoint those to whom the
 remaining assets of the trust for her benefit should pass at her death, then
 that trust is to continue for a period of 20 years following the death of the
 survivor of Emily and Ellen. The trusts for the benefit of the daughters
 likewise continue until 20 years following the death of the survivor of the
 two. The Decedent's wife died in 1983 without exercising the power of
 appointment granted her under Item Four of the Will. Decedent's daughter Emily
 Roeser Parker died in 1987. Decedent's daughter Ellen Roeser is still living.
   
      Under the Will's provisions for distributions of
 trust income, and ultimately of trust corpus, as it relates to all three
 trusts, the Decedent's grandchildren are beneficiaries or contingent
 beneficiaries. A deceased grandchild's beneficial interest passes to the
 deceased grandchild's children or their heirs. The Will uses the language
 "children born of her body"--Emily's body or Ellen's body--to
 describe the class of grandchildren beneficiaries. It uses the word[s]
 "the children, and their heirs, of any deceased child of her body to be
 entitled to their parent's portion per stirpes" to describe the class of
 beneficiaries who may take through a deceased grandchild. The Will does not
 define "children," neither does it contain any provision explicitly
 including or excluding adopted children from the class of beneficiaries who
 may take through a deceased grandchild. The Decedent's grandchildren include
 Earle Whitney Parker, who died in 1998. Earle Whitney Parker was the adoptive
 parent of two children, Christy Lynn Parker and Robert Clinton Parker.

An agreed stipulation of facts was
also filed in the companion case regarding the estate of Pavelic, Roeser's wife,
which states:

        
 Maxine Shannon Pavelic (hereafter Decedent) died in 1983. Her probated Will
 consisted, collectively, of a 1971 will with 1977 and 1978 codicils. Article
 Four of the Will created a trust from her residuary estate, to be divided into
 equal and separate shares/trusts for each of her grandchildren. Article Four
 defined "grandchildren" as "child or children born (including
 those hereafter born) to" the Decedent's daughters by her marriage to
 Charles Roeser, Emily and Ellen. Article Four provides for distributions
 during the trust's existence and for distribution of its remaining assets upon
 termination of the trust. Under Article Four, a deceased grandchild's
 beneficial interest passes to his "descendant" or
 "descendants," per stirpes. Article Five of the Will, which states
 that its provisions apply to every trust created by the will, except as
 otherwise provided in the Will, provides that "'descendants' and
 'descendant' as used in this will, designate the lawful issue of a deceased
 person in the line of descent." The Decedent's grandchildren include
 Emily's son Earle Whitney Parker, who died in 1998. Earle Whitney Parker was
 the adoptive parent of Christy Lynn Parker and Robert Clinton Parker.
   
      The Will, under Article Three-A, also created a trust
 for the benefit of the Decedent's husband, Ante Pavelic. Her husband's trust
 was to terminate upon his death and its assets to pass to the trustee of the
 grandchildren's trust "to be held, administered and distributed pursuant
 to the terms of Article Four of My Will, if such trust is then in
 existence." If the grandchildren's trust was not "then in
 existence," Section 3 of Article Three-A provided that the assets of the
 husband's trust were to "pass free of trust to my daughters and their
 descendants, per stirpes. [The word 'descendants' as used in this Section
 shall mean any natural born child or children in the line of descent of a
 deceased parent.]" When Ante Smith Pavelic died, the trust created by
 Article Four of the Decedent's Will was still in existence.

After fourteen months without a
ruling by the probate court on the parties' respective motions for summary
judgment, counsel for appellants filed a petition for writ of mandamus in this
court for each case. In re Parker, Nos. 02-01-280-CV, 02-01-281-CV
(Tex. App.--Fort Worth Sept. 14, 2001) (orig. proceeding) (not designated for
publication). This action apparently evoked an oral announcement of recusal from
the probate judge, but no recusal order was signed. A few days later, the
probate judge sent a letter to the attorneys of record retracting his recusal
and ruling on the parties' motions. On October 11 and 12, 2001, the probate
court signed orders granting appellees' motions for partial summary judgment in
each case and denying appellants' corresponding motions for summary judgment.
III. The Probate
Judge's Alleged Announcement of Recusal
In their first issue, appellants
complain that the October 11 and 12, 2001 orders, which denied appellants'
motions for summary judgment and granted appellees' motions for partial summary
judgment, are void because the orders were signed by the judge after he orally
recused himself from the case. Appellees contend, on the other hand, that the
oral announcement referred to by appellants, which was delivered to appellants'
counsel by voicemail, is not a part of the appellate record and stress that no
formal order of recusal was ever signed by the probate judge.
Rule 18b of the Texas Rules of
Civil Procedure sets forth the grounds for disqualification and recusal of
judges. Tex. R. Civ. P. 18b. The provision states, in relevant part:

 (2) Recusal
 
 A judge shall recuse himself in
 any proceeding in which:
        
 (a) his impartiality might reasonably be questioned;
        
 (b) he has a personal bias or prejudice concerning the subject matter or a
 party, or personal knowledge of disputed evidentiary facts concerning the
 proceeding.
 

Tex. R. Civ. P. 18b(2)(a)-(b). The
rule further provides that "[t]he parties to a proceeding may waive any
ground for recusal after it is fully disclosed on the record." Tex. R. Civ.
P. 18b(5). Rule 18a(c) states:

        
 If the judge recuses himself, he shall enter an order of recusal and request
 the presiding judge of the administrative judicial district to assign another
 judge to sit, and shall make no further orders and shall take no further
 action in the case except for good cause stated in the order in which such
 action is taken.

Tex. R. Civ. P. 18a(c).
Appellants assert that the probate
judge orally recused himself in a recorded voicemail message sent to appellants'
counsel on September 5, 2001, the same day that appellants filed a petition for
writ of mandamus in an effort to compel the probate judge to issue a ruling on
the parties' competing summary judgment motions. The text of that voicemail
message was attached to appellants' mandamus petition and is set forth in
appellants' brief to this court; however, the message is not a part of the
record on appeal.(3) In our review of the issues
presented by appellants, we are restricted to considering only that which is
contained in the appellate record. Sabine Offshore Serv., Inc. v. City of
Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding); Dominguez
v. Gilbert, 48 S.W.3d 789, 794 (Tex. App.--Austin 2001, orig. proceeding); Perry
v. Kroger Stores, 741 S.W.2d 533, 535 (Tex. App.--Dallas 1987, no writ)
(op. on reh'g). Accordingly, we will not review the content of the probate
judge's statement to appellants' counsel.
Evidence contained in the appellate
record, however, confirms that the probate judge did make an oral statement
recusing himself from this case before ruling on the parties' motions for
summary judgment. A September 10, 2001 letter from the probate judge to the
parties' attorneys states that "[o]n further consideration, the Court
hereby rescinds its sua sponte oral recusal of September 5, 2001."
[Emphasis added.] Thereafter, the letter sets forth the probate court's rulings
on the parties' summary judgment motions and offers the reasoning behind those
rulings. Thus, the only evidence in the record reflecting the probate judge's
oral recusal also demonstrates that the probate judge expressly rescinded his
statement before ruling upon the parties' motions. Furthermore, the record does
not reflect that the probate judge entered an order of recusal or requested that
another judge be assigned to the case as required by rule 18a.
Relying upon Dunn v. County of
Dallas, appellants claim that the probate judge's oral statement in this
case was a clear and unequivocal act of the probate court, constituting an
irrevocable recusal, and submit that the absence of a formal order of recusal
had no effect upon the validity of the action. 794 S.W.2d 560, 562 (Tex.
App.--Dallas 1990, no writ). As appellees point out in their brief, however, the
facts surrounding the probate judge's recusal in Dunn are
distinguishable from the present case. In Dunn, the trial judge sent a
letter to the presiding judge of the administrative district voluntarily
recusing himself from a case and requesting the assignment of a different judge.
Id. at 561. Copies of the letter were sent to all attorneys of record. Id.
No further action was taken on the letter, no order of recusal was entered, and
the original judge continued to preside over the cause, eventually granting
summary judgment. Id. On appeal, the Dunn court held that the
trial judge's letter was a valid and effective order of recusal, which divested
the trial judge of the power to enter the summary judgment. Id. at
562-63. The court specifically pointed out that "[n]o other order
rescinding, modifying, or otherwise changing this recusal order is in the
record." Id.
In the present case, on the other
hand, the sole evidence in the record that any act of recusal occurred is
inextricably combined with an express statement by the probate judge rescinding
that action. Nothing in the record suggests that appellants objected to the
probate judge's rescission of his oral recusal. In addition, the record contains
no written motion for recusal, which appellants could conceivably have filed
following receipt of the probate judge's September 10 letter. See Tex.
R. Civ. P. 18a(a) (authorizing "any party" to file a motion stating
reasons why the judge before whom a case is pending should be removed).
Moreover, our examination of the record reveals no facts indicating bias,
prejudice, or any other cause to reasonably question the impartiality of the
probate judge in this case. Because the probate judge affirmatively retracted
his oral recusal and appellants took no steps to secure his subsequent removal
from the case pursuant to rule 18a, we hold that appellants have waived the
issue of recusal on appeal. See In re Union Pac. Res. Co., 969 S.W.2d
427, 428 (Tex. 1998) (orig. proceeding) (recognizing that, unlike constitutional
grounds for disqualification, grounds for recusal of a trial judge can be waived
if not raised by proper motion). Accordingly, we overrule appellants' first
issue.
IV. Propriety of
Summary Judgment for Adopted Great-Grandchildren
In their second and third issues,
appellants complain that the trial court erred by granting appellees' motions
for partial summary judgment and denying appellants' motions for summary
judgment. Appellants argue that the language of the Roeser and Pavelic trusts
shows an intent to exclude adopted great-grandchildren as beneficiaries.
Appellees argue, however, that the trusts clearly show an intent to include them
as beneficiaries.
Questions of law are appropriate
matters for summary judgment. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d
217, 222 (Tex. 1999). Absent ambiguity, the construction of a will is a matter
of law. Penland v. Agnich, 940 S.W.2d 324, 326 (Tex. App.--Dallas 1997,
writ denied). We review such questions of law de novo. Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994). Here, both parties agree that the
will is unambiguous, as evidenced by their opposing motions for summary
judgment. See Sharp v. Broadway Nat'l Bank, 761 S.W.2d 141,
144 (Tex. App.--San Antonio 1988), aff'd as modified on other grounds,
784 S.W.2d 669 (Tex. 1990) (per curiam).
When both parties move for summary
judgment and the trial court grants one motion and denies the other, the
reviewing court should review both parties' summary judgment evidence and
determine all questions presented. Dow Chem. Co. v. Bright, 89 S.W.3d
602, 605 (Tex. 2002). The reviewing court should render the judgment that the
trial court should have rendered.(4) Id.
A. Roeser Trusts
In "Codicil No. 1 to Last Will
Dated February 19, 1947 of Chas. F. Roeser," Roeser created three separate
trusts: one for Pavelic, the second for his daughter Emily, and the third for
his other daughter Ellen. Roeser created a power of appointment in Pavelic's
trust and stated that if she did not name and appoint those who should gain the
balance of the corpus and undistributed income, then the trustee shall pay:

        
 [O]ne-half (½) of the net income of the trust to my daughter, Emily Roeser,
 if then living, if not, in equal shares, to the children born of her body;
 the children, and their heirs, of any deceased child of her body to be
 entitled to their parent's portion per stirpes; and if there be none such
 to take and receive the one-half (½) share of the net income of the trust,
 going to Emily Roeser, then her said one-half (½) share in said net income
 shall go and be paid to her sister, Ellen Roeser, if then living, if not, to
 the children born of her body; the children, and their heirs, of any deceased
 child of her body to be entitled to their parent's portion per stirpes.
 [Emphasis added.]

The provision creating Ellen's
trust contains identical language as Emily's trust, but where "Emily"
is used, the name "Ellen" is substituted and vice versa.
Our primary inquiry in interpreting
a will is to determine the intent of the testator. Gee v. Read, 606
S.W.2d 677, 680 (Tex. 1980). If the will itself is unambiguous, courts should
not go beyond its specific terms in search of the testator's intent. Penland,
940 S.W.2d at 326. We apply the law as it existed at the time the will was
executed. Id.
In this case, the applicable law
was the 1931 adoption statute.(5) The law in
effect at the time presumed that adopted children do not take under a will
executed by a third person unless the will discloses a contrary intent. See
Cutrer v. Cutrer, 345 S.W.2d 513, 516-17 (Tex. 1961). As the supreme court
in Cutrer made clear, the 1931 adoption statute's presumption against
including adopted children applied only if other language or circumstances of
the will did not indicate a contrary intent. Id. at 515; Penland,
940 S.W.2d at 326. The key question is not whether adopted persons have a right
to take under the law, but whom the testator intended to share in his estate. Sharp,
761 S.W.2d at 144. If Roeser's trust discloses an intent contrary to the
presumption of the 1931 adoption statute, that intent controls. The court may
not "add to, subtract from, amend, correct, reform, revise, or rewrite the
will even if the court might think that the testator was unreasonable, unjust or
unwise in bequeathing and devising his property as he did." Sanderson
v. First Nat'l Bank, 446 S.W.2d 720, 723 (Tex. Civ. App.--Dallas 1969, writ
ref'd n.r.e.).
Here, Roeser specifically stated in
Emily's and Ellen's trusts that "children born of her body" were to
receive equal shares of the trust. It is well settled that such language is
construed to exclude adopted persons from benefitting under a will or trust. See
Nail v. Thompson, 806 S.W.2d 599, 600 (Tex. App.--Fort Worth 1991, no
writ); see also Cutrer, 345 S.W.2d at 515 (holding that an adopted
child is not entitled to property conveyed or devised to the children of the
adoptive parent); Vaughn v. Vaughn, 337 S.W.2d 793, 797 (Tex. 1960)
(stating that use of the word "born" renders it most improbable that
the testator was referring to children born to strangers); Murphy v. Slaton,
273 S.W.2d 588, 597 (Tex. 1954) (holding that child, children, or descendants of
any child or children did not include adopted children).
The next clause in the trusts
states that "the children, and their heirs, of any deceased child of her
body [are] entitled to their parent's portion per stirpes." Although Roeser
created a limitation that only children "of the body" of Emily and
Ellen (Roeser's grandchildren) could receive income and corpus from trusts, this
limitation does not extend to their grandchildren (Roeser's
great-grandchildren), as demonstrated by the removal of the "of the
body" language in the second clause. Because this language discloses an
intent contrary to the presumption of the 1931 adoption statute, it controls.
Furthermore, it must be assumed that Roeser knew the presumption under the 1931
statute and the cases construing it, which excluded adopted children unless the
will or trust included contrary language. See Cutrer, 345 S.W.2d at 517
(stating that if the statute is to be given any weight on the theory of presumed
knowledge of the law, it must be assumed that the parties knew of its limited
application).
Including the "of the
body" language in the first clause, but deleting it from the following
clause indicates that Roeser intended to include adopted great-grandchildren.
Although appellants argue that it is simply not logical to assume that Roeser
would exclude adopted grandchildren but include adopted great-grandchildren, we
cannot redraft wills to add provisions "under the guise of
construction" to reach a presumed intent. San Antonio Area Found. v.
Lang, 35 S.W.3d 636, 639 (Tex. 2000); see also Sanderson,
446 S.W.2d at 723 (stating that courts may not rewrite the will even if the
court thinks that the testator was unreasonable, unjust, or unwise in
bequeathing and devising his property as he did).
Appellants rely on this court's
decision in Nail v. Thompson in which we held that the word
"born" precluded adopted beneficiaries from inheriting from the
immediate heirs as well as their descendants. 806 S.W.2d at 601. The facts in Nail,
however, are distinguishable. In Nail, the trust language stated that
the assets should be delivered to "the lawful heirs (or descendants of
same), if there be any then living, born of the body of my [named
sibling or in-law]; said . . . share[s] to be divided and to be distributed to
such lawful heirs (or descendants of same), per stirpes." Id.
at 600. We determined that the "born of the body" language excluded
adopted persons. Id. The testator's intent to exclude adopted persons
was made even clearer by use of the term "lawful heirs (or
descendants)" because the law in effect at the time did not allow adopted
children to inherit through their parents; therefore, an adopted person was not
a lawful heir. Id. at 601. Here, Roeser does not use the same language
for the various classes and generations of beneficiaries that was used in Nail.
Furthermore, Nail did not create a rule of exclusion of all future
generation adopted children regardless of the testator's use of contrary
testamentary language; it simply applied unambiguous terms clearly showing the
testator's intent for that will.
B. Pavelic Trusts
Under article four, section 3 of
Pavelic's will, Pavelic established a separate trust for the benefit of each
grandchild living at her death. She defined "grandchild" or
"grandchildren" as "children born . . . to my two daughters,
Emily Roeser Parker and Ellen Roeser Brants." Upon termination of each
trust, the assets would be distributed to the grandchild for whom the trust was
created. If a grandchild for whom a trust was created died before termination of
the trust and was survived by any descendants, the trust assets would pass to
the descendants who were living at the date of termination. In the will,
"descendants" and "descendant" are defined as "the
lawful issue of a deceased person in the line of descent and shall not be
construed to include the issue of a parent in the line of descent who is living
at the time in question."(6)
In a codicil, Pavelic also
established a trust for her husband that would terminate upon his death. Upon
termination, the assets of the trust would be distributed according to article
four of the will, if the Pavelic trusts still existed. If the Pavelic trusts did
not exist, the assets would pass free of trust to Emily, Ellen, and their
descendants. According to the codicil, "'[D]escendants' as used in this
Section shall mean any natural born child or children in the line of
descent of a deceased parent." [Emphasis added.]
In will construction, we apply the
law as it existed at the time the will was executed. Penland, 940
S.W.2d at 326. Pavelic's will is controlled by the 1951 adoption statute, which
stated:

        
 [A] child shall . . . be deemed and held to be for every purpose the child of
 its parent or parents by adoption as fully as though naturally born to them in
 lawful wedlock . . . . Such adopted child shall be regarded as a child of the
 parent or parents by adoption for all other purposes as well, except that
 where a deed, will, or other instrument uses words clearly intended to exclude
 children by adoption, such adopted child shall not be included in such class.

See Act of May 7, 1951, 52nd
Leg., R.S., ch. 249, 1951 Tex. Gen. Laws 1388, 390, amended 1973, 1977,
1987, 1989, 1991, repealed and recodified by Act of April 6, 1995, 74th
Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 221, 282 (current
version at Tex. Fam. Code Ann. § 162.017 (Vernon 2002)) (stating that the terms
"child," "descendant," or "issue," and other terms
indicating the relationship of parent and child include an adopted child unless
the context or express language clearly indicates otherwise). Thus, the
statutory presumption was that adopted children were included as beneficiaries
unless words clearly indicated that they were excluded. See Vaughn, 337
S.W.2d at 796.
Appellants first argue that a
testator's use of language of exclusion in one section of a will is effective as
to the entire will. They argue that "descendants," as defined in
article three-A, section three of the codicil, should control the whole
document. The codicil states that "'descendants' as used in this Section
shall mean any natural born child or children in the line of descent of a
deceased parent."
Appellants rely on Sharp v.
Broadway National Bank, in which the appellants argued that because two
will provisions did not specifically exclude adopted children, they were
entitled to receive the benefits of the trust. 761 S.W.2d at 143. The court
upheld the trial court's decision to exclude adopted children based on the
language in another provision of the will, in which the testator expressly
stated that he wanted "relatives of the whole blood and/or their issue [to]
receive the greatest benefit . . . and not any strangers, or relatives of the
half blood, or their issue." Id. at 143-45.
Here, Pavelic's will does not
contain such strong language to show an intent to exclude adopted
great-grandchildren. Furthermore, we believe that Hagaman v. Morgan
settles the issue of whether the use of exclusion language in one section of a
will is effective as to the entire will. 886 S.W.2d 398 (Tex. App.--Dallas 1994,
writ denied). The will dispute in Hagaman centered around two
provisions. One provision determined how a life estate would be devised if any
of the testatrix's children predeceased her and specifically discussed an
adopted grandchild. The second provision stated, "Upon termination of the
life estate of each of my children, I give, devise, and bequeath the remainder
thereof to that child's bodily issue, share and share alike, or their bodily
issue in their stead, per stirpes." Id. at 399. Because the
testatrix's four children survived, the provision discussing the adopted
grandchild never applied. Id. at 400. Although the appellants tried to
argue that the testatrix intended to limit the devise to blood relatives because
she mentioned the adopted grandchild in one provision and not the other, the
court disagreed. Id. at 402. The court held that it did not even reach
the provision concerning the adopted grandchild because all of the testatrix's
children were living at her death; therefore, the provision never became
effective. Id. The provision providing for the life estate to go to her
children's "bodily issue" controlled. Id. Because the court
held that terms such as "bodily issue" included adopted children under
the 1951 adoption statute, the adopted grandchild was a beneficiary under the
will. Id.
Here, appellants are also relying
on a definition from an article of Pavelic's will that never became effective.(7)
The article applied only if Pavelic's husband died and his trust, along with the
Pavelic trusts, had been terminated. Here, the Pavelic trust did not terminate
before his death. Therefore, the trust assets were disposed of under the terms
of the Pavelic trust created in article four. Similar to the Hagaman
court, we do not reach the question of whether the article three-A provision
controls because it never became effective. Accordingly, we do not construe the
definition of "descendants" as used in that article to apply to the
entire will.(8)
We now focus on the definition of
"descendants" as used in article five, section six.
"Descendants" and "descendant" are defined as "the
lawful issue of a deceased parent in the line of descent and shall not be
construed to include the issue of a person in the line of descent who is living
at the time in question." As previously mentioned, the presumption of the
1951 statute provided adopted children a status equivalent to natural children
for inheritance purposes unless a will specifically excluded them. See Sharp,
761 S.W.2d at 144. Thus, appellees are presumed beneficiaries under the Pavelic
trust unless the will contains specific language showing a contrary intent.
Although when Pavelic created the
separate trusts for her grandchildren she provided a limitation that grandchild
or grandchildren means "children born . . . to my two daughters, Emily
Roeser Parker and Ellen Roeser Brants," she did not include this limitation
as to those who may take under the trusts if a grandchild was deceased. She
simply stated that the property should pass to the living descendants, which are
defined as "lawful issue." By choosing the term "lawful
issue," Pavelic specifically rejected other terms, such as "born"
and "of the body," that have commonly been construed to exclude
adopted persons. See Penland, 940 S.W.2d at 327; see also Ortega v.
First RepublicBank Fort Worth, 792 S.W.2d 452, 454 (Tex. 1990) (op. on
reh'g) (holding that "any other great-grandchildren who may be born after
my death" excluded adopted children); Nail, 806 S.W.2d at 601
(holding that "lawful heirs . . . born of the body" excluded adopted
children). We conclude that Pavelic's use of "lawful" to modify
"issue" indicates her intention to include all persons who became
"issue" by any legal process, including adoption. See Penland,
940 S.W.2d at 327. Thus, appellees are beneficiaries under the Pavelic trust.
Because appellees are beneficiaries
under the Roeser and Pavelic trusts, we hold the probate court did not err in
granting appellees' motions for summary judgment. Accordingly, we affirm the
probate court's partial summary judgments in favor of appellees.(9)
V. Conclusion
Having overruled all of appellants'
issues, we affirm the trial court's judgments.
 
                                                                      
TERRIE LIVINGSTON
                                                                      
JUSTICE
 
PANEL B: LIVINGSTON, DAUPHINOT, and
GARDNER, JJ.
 
DELIVERED: August 14, 2003

1. Probate court cause number 83-1196-1 was assigned to
the action concerning the will of Maxine Shannon Pavelic (now appellate court
cause no. 2-02-312-CV); probate court cause number 49-20098-1 was assigned to
the action concerning the will of Charles F. Roeser (now appellate court cause
no. 2-02-313-CV). The cases have been consolidated on appeal.
2. Patrick Allison Parker is not a party to this appeal.
3. Following the probate judge's September 10 letter
ruling on the parties' motions for summary judgment, this court denied
appellants' petitions for writ of mandamus as moot. In re Parker, Nos.
02-01-280-CV, 02-01-281-CV (Tex. App.--Fort Worth Sept. 14, 2001) (orig.
proceeding) (not designated for publication).
4. Appellants argue that appellees failed to file a
response or object to any part of their summary judgment motions; therefore, all
of their evidence is taken as true, and they are entitled to summary judgment.
As the appellees correctly argue, however, the Texas Supreme Court has held that
when parties file cross- motions for summary judgment, the trial court should
treat one cross motion as a reply to the other cross-motion. See DeBord
v. Muller, 446 S.W.2d 299, 301 (Tex. 1969) (holding that because both
summary judgment motions were properly before the court at the time judgment was
rendered, all the evidence accompanying defendant's motion for summary judgment
was likewise evidence to be considered in deciding plaintiff's motion and vice
versa). Thus, all legal arguments were properly presented to the probate court
in the motions for summary judgment.
5. See Act of May 21, 1931, 42nd Leg.,
R.S., ch. 177, § 9, 1931 Tex. Gen. Laws 300, 302, amended 1951, 1973,
1977, 1987, 1989, 1991, repealed and recodified by Act of April 6,
1995, 74th Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113,
221, 282 (current version at Tex. Fam. Code Ann. § 162.017 (Vernon 2002)).
6. When Pavelic died in 1983, a trust was created for
Earle Whitney Parker as required under article four, section three. When Earle
died in 1998, he was survived by appellees, his two adopted children.
7. Article three-A of the "Third Codicil to the Last
Will and Testament of Maxine Shannon Pavelic" states that "'[D]escendants'
as used in this Section shall mean any natural born child or children in the
line of descent of a deceased parent."
8. Furthermore, the definition in article three-A
specifically states that it applies only to that section of the will.
9. Appellants argue that Ortega, Vaughn,
and Nail are controlling because these cases hold that use of the word
"born" shows the testator's intent to exclude adopted children from
taking under a will. Ortega, 792 S.W.2d at 454; Vaughn, 337
S.W.2d at 798; Nail, 806 S.W.2d at 601. This argument, however, ignores
the different wording used in the Pavelic will to define
"grandchildren" and "descendants" as those terms relate to
the trusts. Pavelic specifically omitted the term "born" in defining
"descendants" and used a term that includes adopted children. See
Penland, 940 S.W.2d at 327 (holding that "lawful issue" indicates
a testator's intent to include adopted children).