Wayne SHARP & Christine Sharp
Ludlum & Leonard Fowler,
Appellants,

v.

BROADWAY NATIONAL
BANK, Appellee.

No. 04–88–00029–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 7, 1988.

William D. Pargaman, Douglas W. Alexander, Craig A. Morgan, Brown, Maroney, Rose, Barber & Dye, Austin, Don Busby, Busby & Associates, Temple, for appellants.

Don Krause, Bayne, Snell & Krause, San Antonio, Phil J. Pollan, Fort Stockton, for appellee.

Before ESQUIVEL, BUTTS and CHAPA, JJ.

## OPINION

CHAPA, Justice.

Our opinion of October 19, 1988, is withdrawn and we substitute this opinion in its stead. TEX.R.APP.P. 101.

This is a will construction case. The principal question before us is whether the trial court properly decided, as a matter of law, that John O. Yates intended to exclude

adopted children from sharing in his estate. We affirm.

John O. Yates died testate on August 30, 1964. His will, which had been executed on July 6, 1953, created a trust, the corpus of which included all of his oil and gas interests and his interest in numerous ranches and homes. Appellee Broadway National Bank is the trustee of this testamentary trust.

At the time of the will's execution, John Yates had four whole-blooded brothers, three whole blooded sisters, and one brother of the half blood. One of his whole-blooded brothers, Alvaro Yates, predeceased him, leaving four children: L.S. Yates, Mayana Sharp, Estelle Holmes, and Allison Yates. Mayana Sharp had adopted appellants Christine Sharp Ludlam and Wayne Sharp when they were infants. L.S. Yates had one natural daughter, Sue Ann Cavender, and had adopted appellant Leonard Fowler in 1939.[1] When Mayana Sharp died in 1984, appellee refused to disburse any of the trust income to appellants Wayne Sharp and Christine Sharp Ludlum. Instead, it filed suit seeking a judicial declaration that the testator John O. Yates, intended to exclude adopted children from taking under his will. Appellant Leonard Fowler filed an interpleader action against Broadway National Bank and Sue Ann Cavender, also requesting a declaratory judgment concerning testamentary intent of John O. Yates. The trial court granted summary judgment in favor of appellees, making the following specific findings:

1. The will of John O. Yates is clear and unambiguous regarding the intention of the testator to exclude adopted children of beneficiaries, under the trust therein established, from taking under the trust upon the death of such beneficiary.

2. John O. Yates used words clearly intended to exclude the adopted children of beneficiaries from the class taking under the will and trust.

3. Defendants, Leonard Fowler, Wayne W. Sharp and Christine Sharp Lud-

lum are excluded from taking under the will and testamentary trust of John O. Yates, as each is an adopted child of a beneficiary.

■ There are two primary provisions in the will which are in dispute. Article I sets forth the general intent and purpose of the testator:

It is my primary purpose will, desire and intention to dispose of all my property in a fair, honest, just and normal manner so that MY RELATIVES OF THE WHOLE BLOOD AND/OR THEIR ISSUE SHALL RECEIVE THE GREATEST BENEFIT THEREFROM AND NOT any STRANGERS, OR RELATIVES OF THE HALF BLOOD, OR THEIR ISSUE, and at the same time reduce to a minimum the impact of any unnecessary and erroneous estate and inheritance taxes upon subsequent interests in my estate.

Article 6, which creates the testamentary trust, provides that:

Upon the death of such brother or sister or niece or nephew, leaving *lineal descendants* surviving such trust shall continue and the net income shall be paid over to his or her lineal descendants in equal shares, per stirpes, for their respective lives.

The will makes no mention of "adopted children." Appellants contend that they are entitled to receive the benefits of the trust because they were not clearly excluded from the will and therefore are presumed to have been included. Appellee argues that by reading the will as a whole, it is clear that the testator intended to exclude the adopted children from taking under it. Appellants place great emphasis on the Texas Adoption statute, TEX.REV. CIV.STAT.ANN. art. 46a § 9 (Vernon 1969), amended in 1951 which provides, in pertinent part:

When a minor child is adopted in accordance with the provisions of this article, all legal relationships and all rights and duties between such child and its natural parents shall cease and determine, and such child shall thereafter be deemed and

---

1. Leonard Fowler was subsequently adopted a second time by Ira Fowler in 1947.

held to be *for every purpose a child of its parent or parents by adoption as fully as though naturally born to them in lawful wedlock* ...

The result of the 1951 Amendment was to afford the adopted child an equivalent status with natural children, as though he or she were the natural child of the adoptive parents. Appellants argue that because of this amendment, they are clearly entitled to take under the will. However, appellants concede that although adopted children are to be treated as "natural" children and therefore have the same right to inherit as the natural children of the beneficiaries of the will, the testator nevertheless, has every right to dispose of his property by will in any manner he chooses. The Texas Adoption Statute provides Texas courts with a helpful rule of construction:

Nothing herein shall prevent anyone from disposing of his property by will according to law. Such adopted child shall be regarded as a child of the parent or parents by adoption for all purposes as well, *except that where a deed, will or other instrument uses words clearly intended to exclude children by adoption, such adopted child shall not be included in such class.*

*Id.*

The presumption created by this statute is that in the absence of language indicating an intent to exclude adopted children, the testator intended to include them. *Vaughn v. Gunter,* 458 S.W.2d 523, 527 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r. e.). It should be noted, however, that this statute is no more than an aid to be employed in the construction of the will, and is not controlling. *See Vaughn v. Vaughn,* 161 Tex. 104, 337 S.W.2d 793, 796 (1960) wherein the Court stated:

The legislature, no doubt, was clothed with power to confer upon the adopted child the right to inherit "from and through" its adoptive parents, but in the case at bar ... the adopted child ... is not claiming under the laws of inheritance, he is claiming under the will of [the Testator]. Therefore, his rights are dependent on what was intended by the

testator ... as expressed in the will. The intent of the testator cannot be supplied by a construction of the meaning of the words of the statute.

*Id.* 337 S.W.2d at 796.

Therefore, when construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit but simply a question of the testator's intention with respect to those who are to share in his estate. Am.Jur. § 644 quoted in *Vaughn, supra,* at 796–97. We cannot defeat the testator's testamentary intent and supplant it with legislative intent. *Id.* at 796. Our primary focus, therefore, must be on the intent of John O. Yates and not on the Texas Adoption Statute.

Accordingly, our next step requires a discussion of the law with regard to the interpretation of wills. The well settled rule for Texas Courts in construing wills is to determine the intent of the testator. *Lehman v. Corpus Christi National Bank,* 668 S.W.2d 687 (Tex.1984); *Gee v. Read,* 606 S.W.2d 677 (Tex.1980). If the will itself is unambiguous, courts should not go beyond its specific terms in search of the testator's intent. *Frost National Bank v. Newton,* 554 S.W.2d 149, 154 (Tex. 1977). Here, both parties agree that the will is unambiguous and insist that no issue of fact exists, as evidenced by their opposing motions for summary judgment.

Absent any express contrary intent, the words used by the testator are to be given their ordinary and commonly understood meaning. *White v. Taylor,* 155 Tex. 392, 286 S.W.2d 925, 926 (1956). In *Diemer v. Diemer,* 717 S.W.2d 160, 162 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.), this test was applied when the testator used the term "issue" in his bequest to his only son who had adopted children at the time of the will's execution, yet used the term "descendants" in bequests to his other children, all of whom had natural children. The court found taht the term "issue" clearly connotes a blood relationship, and therefore concluded that by using this term in the bequest to the (only) adoptive

parent, the adopted child was excluded from taking as a beneficiary of the testator's estate. *Diemer,* at 162 citing *Cutrer v. Cutrer,* 162 Tex. 166, 345 S.W.2d 513, 517 (1961) and BLACK'S LAW DICTIONARY (5th ed. 1979).

In the case before us, the testator's use of the term "strangers" in Article 1 of his will is particularly controlling. The term "strangers" has historically been used as a term of art in the creation of wills and trusts to refer to any person not a blood relative of the testator. Appellee cites to numerous out of state cases which employ the terms "strangers," "strangers in blood," and "strangers of the blood" which fortify this argument. Our Supreme Court in *Vaughn v. Vaughn, supra,* has itself used the term in the context of adopted children:

> ... [A]n examination of the will in its entirety discloses no purpose to include an adopted child as a beneficiary ... [the testator did not intend that a new, separate, and distinct trust should be created for the benefit of an after adopted child, ... the use of the words "born after my death" *renders it most improbable that he was referring to children born to strangers....*

*Id.* 337 S.W.2d at 797.

Hence, our Supreme Court has recognized the phrase "children born to strangers" to mean those children not blood related, and has recognized that adopted children are "children born to strangers." When coupled with the fact that the testator used the term "strangers" in the same exclusionary sentence with the phrase "relatives of the half blood or their issue," the inescapable conclusion must be that John O. Yates intended to exclude those children not related to him by whole blood. By clearly stating that his "primary purpose, will and desire" was to create the greatest benefit for his "relatives of the whole blood and/or their issue" the testator unambiguously intended to exclude adopted children from benefiting from his estate. In the next phrase, the testator uses words of negation to eliminate those persons he does not intend to share in his estate: "strangers and relatives of the half blood and their issue."

Although appellants insist the will is not ambiguous, they argue that Article 1 of the will is inconsistent with Article 6 of the will because it uses the term "lineal descendants." They contend that because Article 6 is the latter, it should prevail. *Morris v. Pickett,* 503 S.W.2d 344, 348 (Tex.Civ.App. —San Antonio 1973, writ ref'd n.r.e.). We find no inconsistency. The testator clearly expressed his intent to include only those relatives of the whole blood in Article 1 of the will, and in so doing, defined those he wished to consider "lineal descendants" throughout his will. We find from an examination of the will in its entirety, that the testator clearly intended to share his estate with only those relatives of the whole blood. Accordingly, the first two points of error are overruled.

In their third point of error, although appellants Wayne Sharp and Christine Sharp Ludlum did not contend at trial and do not contend now that attorney's fees are not proper in this case, they do argue that the trial court improperly allowed appellee's expert witnesses to testify because they had not been designated at least 30 days prior to trial in accordance with TEX. R.CIV.P. 166b(5).[2]

At trial, appellee offered the testimony of three witnesses concerning the issue of reasonable and necessary attorney fees. The first prospective witness, Jack Leon, was never designated in appellee's answers to appellant's interrogatories. The second, Jack Pasqual, was not designated but had been deposed by appellant's attorney one week before trial. Appellant had received notice of this deposition 26 days prior to trial. Finally, appellee's attorney, Don Krause, called himself to testify. Like the others, his name had never been supplemented in appellee's responses to discovery requests. The trial court excluded the testimony of Jack Leon, but allowed the testimony of Jack Pasqual and appellee's attor-

---

2. *See* now TEX.R.CIV.P. 166b(6), *amended,* effective January 1, 1988.

ney, Don Krause. Appellants claim that this was improper.

The Texas Supreme Court has recently discussed the harsh consequences of non-compliance with Rule 166b(5). If the identity of an expert witness is not disclosed at least 30 days prior to the beginning of trial, the proffered testimony is subject to automatic exclusion. *E.F. Hutton v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987). To introduce the testimony in the absence of supplementation, it is incumbent on the offering party to make a showing of good cause to the trial court. TEX. R.CIV.P. 215(5). *Morrow v. H.E.B.*, 714 S.W.2d 297, 298 (Tex.1986).[3] It is no longer the burden of the questioning parties to make a showing of surprise or to accept a continuance forced on them. *Gutierrez v. Dallas Independent School District*, 729 S.W.2d 691, 694 (Tex.1987).

A trial court implicitly finds good cause when it allows the testimony of witnesses in question. *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 877 (Tex. App.—Corpus Christi 1988, writ denied); *see Davis v. Dowlen*, 136 S.W.2d 900, 904 (Tex.Civ.App.—Beaumont 1939, writ dism'd judgmt. cor.). The determination of good cause rests within the sound discretion of the trial court. *Morrow, supra.*

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Bush v. Vela*, 535 S.W.2d 803, 805 (Tex.Civ.App.—Corpus Christi 1976, mand. overr.); *King v. Guerra*, 1 S.W.2d 373, 376 (Tex.Civ.App.—San Antonio 1927, writ ref'd). In such situations, the reviewing court must determine whether the trial court acted without reference to any guiding rules and principles. *Morrow* at 298.

The record here reflects clearly that the trial court was aware of the necessity of a finding of good cause before the

testimony was to be admitted. It implicitly made a finding of good cause in permitting the testimony of Pasqual and appellee's attorney Krause. Likewise, the court implicitly found no showing of good cause in rejecting the testimony of Leon. *Ramos, supra* at 877. Appellant was given notice of Pasqual's deposition on September 25, 1987, 26 days before trial. Appellant's attorney appeared at the deposition and cross-examined the witness, whose opinion testimony consisted of nothing other than the issue of reasonable and necessary attorney fees in the case. In addition, the record reflects the trial judge considered that appellee's pleadings specifically prayed for reasonable and necessary attorney fees and were received by appellant long before the trial. The totality of the record leads us to conclude that the trial court did not abuse its discretion in making a determination of good cause to allow the testimony of Pasqual. While we are aware that it is no longer the burden of the questioning party to make a showing of surprise, we do not interpret this to mean that the trial judge no longer has the discretion to consider lack of surprise in finding good cause. "The rules of discovery were changed to prevent trials by ambush and to ensure that fairness would prevail." *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978); *Gutierrez, supra* at 693. We find no unfairness or ambush in allowing the testimony of a witness who was deposed and cross-examined by both parties a week before trial simply because the opposing party only received a 26 instead of a 30 day notice. The trial court properly exercised its discretion in allowing into evidence the deposition testimony of Jack Pasqual.

However, we do not make this same determination with respect to the testimony of appellee's attorney, Don Krause. His reasons for good cause are extraordinarily similar to those argued in *E.F. Hut-*

---

3. TEX.R.CIV.P. 215(5) at the time of this proceeding provided that the testimony of witnesses *not* disclosed by interrogatory responses would be excluded "unless the court finds that good cause sufficient to require admission exists."

The new Rule 215(5), which took effect January 1, 1988, sets forth the additional requirement that "the burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record."

*ton v. Youngblood,* 741 S.W.2d 363 (Tex. 1988), where the appellant's attorney called himself and another attorney to testify concerning attorney fees, neither of whom had been properly designated as experts. *Id.* at 364. There, the attorney explained that he had only decided on the day of trial who would testify, and that the opposing attorney already possessed the special knowledge to cross-examine the witness. The Supreme Court stated that neither of these reasons constituted good cause under their holdings of *Morrow, supra,* and *Yeldell v. Holiday Hills Retirement & Nursing Center,* 701 S.W.2d 243, 246 (Tex.1985). The similarity to *E.F. Hutton* requires that we find the admission of the testimony of Don Krause was error.

 Having found error, we must next determine whether this error is sufficient to require reversal. We hold that the error did not amount to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). After reviewing the record, we find sufficient evidence to sustain the trial court's award of $35,-000.00 in attorney fees without the testimony of Krause.

The judgment of the trial court is affirmed.