PARKER V. PARKER

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-02-312-CV

        2-02-313-CV

SHANNON EMILY PARKER APPELLANTS

AND KELLI PARKER

V.

CHRISTY LYNN PARKER APPELLEES

AND ROBERT CLINTON PARKER

------------

FROM PROBATE COURT NO. 1 OF TARRANT COUNTY

------------

OPINION ON REHEARING

------------

I.  
Introduction

After reviewing appellants’ motion for rehearing, we deny the motion, withdraw our August 14, 2003 opinion and judgment, and substitute the following in their place.

Appellants Shannon Emily Parker and Kelli Parker appeal from the probate court’s denial of their motions for summary judgment and the court’s corresponding ruling granting appellees Christy Lynn Parker and Robert Clinton Parker’s motions for partial summary judgment.  In three issues, appellants complain that the probate judge was without power to rule upon the parties’ summary judgment motions due to a previous oral recusal and that if the probate judge possessed such power, he erred by denying appellants’ motions and granting appellees’ motions.  We affirm.

II.  
Factual and Procedural History

These are companion cases dealing with the disposition of the estates of Charles F. Roeser (“Roeser”) and Maxine Shannon Pavelic (“Pavelic”), respectively.  The cases involve the construction of Roeser’s and Pavelic’s wills and whether or not adopted great-grandchildren are eligible beneficiaries of testamentary trusts created under them.

On July 27, 1999, Chase Bank of Texas (“Chase”), acting as trustee of the trusts created under the respective wills of Roeser and Pavelic, filed an “Original Petition for Declaratory Judgment” under two cause numbers in Probate Court Number One of Tarrant County.
(footnote: 1)  Chase sought a declaration in each case construing the terms of the testamentary trusts created under the respective wills and a determination of the interested parties’ rights under those trusts.  The interested parties named by Chase who are now parties to this appeal include appellants, the biological daughters of Emily Roeser Parker and grandchildren of Roeser and Pavelic, and appellees, the adopted children of Earle Whitney Parker, Emily Roeser Parker’s son, and adopted great-grandchildren of Roeser and Pavelic.

Appellants and a third sibling, Patrick Allison Parker,
(footnote: 2) answered Chase’s petitions and asserted cross-claims against appellees alleging that appellees possessed no rights to the trusts created under the Roeser and Pavelic wills  because of their status as adopted children
.  Appellants requested a judicial declaration that appellees have no interest in either estate.  On May 12, 2000, appellees answered and filed counterpetitions for declaratory judgment, in which they argued that the probate court should, as a matter of law, “construe the language of the Decedent’s Will in such a way as to treat all heirs of Decedent’s children the same, whether such heirs are adopted or not.”  On the same day, appellees also filed motions for partial summary judgment requesting the court to hold that the Pavelic trusts did not exclude adopted great-grandchildren.

Thereafter, appellants filed motions for summary judgment on their cross-claims against appellees, asserting that summary judgment evidence presented by appellants proved as a matter of law that appellees possessed no interest in either estate and that there was no evidence either Roeser or Pavelic intended for adopted great-grandchildren to inherit under the terms of their wills.  The evidence attached to appellants’ motions for summary judgment includes:  Pavelic’s October 15, 1971 will, an October 31, 1971 handwritten codicil to Pavelic’s will, a March 25, 1977 second codicil to Pavelic’s will, a July 6, 1978 third codicil to Pavelic’s will, Roeser’s February 19, 1947 will, a February 19, 1947 first codicil to Roeser’s will, and a February 4, 1949 second codicil to Roeser’s will, all of which bear the seal of the County Clerk of Tarrant County, Texas.

With the competing summary judgment motions pending before the probate court, the parties set forth the following agreed stipulation of facts regarding the estate of Roeser, which is part of the clerk’s record:

Charles F. Roeser (hereafter Decedent) died in 1949.  His probated Will consisted, collectively, of a 1947 will and 1947 and 1948 codicils.  Item Four of the Will created three trusts, one for the Decedent’s wife, Maxine Shannon Roeser, and one for each of his two daughters, Emily and Ellen.  The Will provided that if the Decedent’s wife failed to appoint those to whom the remaining assets of the trust for her benefit should pass at her death, then that trust is to continue for a period of 20 years following the death of the survivor of Emily and Ellen.  The trusts for the benefit of the daughters likewise continue until 20 years following the death of the survivor of the two.  The Decedent’s wife died in 1983 without exercising the power of appointment granted her under Item Four of the Will.  Decedent’s daughter Emily Roeser Parker died in 1987.  Decedent’s daughter Ellen Roeser is still living.

Under the Will’s provisions for distributions of trust income, and ultimately of trust corpus, as it relates to all three trusts, the Decedent’s grandchildren are beneficiaries or contingent beneficiaries.  A deceased grandchild’s beneficial interest passes to the deceased grandchild’s children or their heirs.  The Will uses the language “children born of her body”—Emily’s body or Ellen’s body—to describe the class of grandchildren beneficiaries.  It uses the word[s] “the children, and their heirs, of any deceased child of her body to be entitled to their parent’s portion per stirpes” to describe the class of beneficiaries who may take through a deceased grandchild.  The Will does not define “children,” neither does it contain any provision explicitly including or excluding adopted children from the class of beneficiaries who may take through a deceased grandchild.  The Decedent’s grandchildren include Earle Whitney Parker, who died in 1998.  Earle Whitney Parker was the adoptive parent of two children, Christy Lynn Parker and Robert Clinton Parker.

An agreed stipulation of facts was also filed in the companion case regarding the estate of Pavelic, Roeser’s wife, which states:

Maxine Shannon Pavelic (hereafter Decedent) died in 1983.  Her probated Will consisted, collectively, of a 1971 will with 1977 and 1978 codicils.  Article Four of the Will created a trust from her residuary estate, to be divided into equal and separate shares/trusts for each of her grandchildren.  Article Four defined “grandchildren” as “child or children born (including those hereafter born) to” the Decedent’s daughters by her marriage to Charles Roeser, Emily and Ellen.  Article Four provides for distributions during the trust’s existence and for distribution of its remaining assets upon termination of the trust.  Under Article Four, a deceased grandchild’s beneficial interest passes to his “descendant” or “descendants,” per stirpes.  Article Five of the Will, which states that its provisions apply to every trust created by the will, except as otherwise provided in the Will, provides that “'descendants' and 'descendant' as used in this will, designate the lawful issue of a deceased person in the line of descent.”  The Decedent’s grandchildren include Emily’s son Earle Whitney Parker, who died in 1998.  Earle Whitney Parker was the adoptive parent of Christy Lynn Parker and Robert Clinton Parker.

The Will, under Article Three-A, also created a trust for the benefit of the Decedent’s husband, Ante Pavelic.  Her husband’s trust was to terminate upon his death and its assets to pass to the trustee of the grandchildren’s trust “to be held, administered and distributed pursuant to the terms of Article Four of My Will, if such trust is then in existence.”  If the grandchildren’s trust was not “then in existence,” Section 3 of Article Three-A provided that the assets of the husband’s trust were to “pass free of trust to my daughters and their descendants, per stirpes. [The word ‘descendants’ as used in this Section shall mean any natural born child or children in the line of descent of a deceased parent.]” When Ante Smith Pavelic died, the trust created by Article Four of the Decedent’s Will was still in existence.

After fourteen months without a ruling by the probate court on the parties’ respective motions for summary judgment, counsel for appellants filed a petition for writ of mandamus in this court for each case.  
In re Parker
, Nos. 02-01-280-CV, 02-01-281-CV (Tex. App.—Fort Worth Sept. 14, 2001) (orig. proceeding) (not designated for publication).  This action apparently evoked an oral announcement of recusal from the probate judge, but no recusal order was signed.  A few days later, the probate judge sent a letter to the attorneys of record retracting his recusal and ruling on the parties’ motions.  On October 11
 and 12
, 2001, the probate court signed orders granting appellees’ motions for partial summary judgment in each case and denying appellants’ corresponding motions for summary judgment.

III.  
The Probate Judge’s Alleged Announcement of Recusal

In their first issue, appellants complain that the October 11
 and 12
, 2001 orders, which denied appellants’ motions for summary judgment and granted appellees’ motions for partial summary judgment,
 are void because the orders were signed by the judge after he orally recused himself from the case.  Appellees contend, on the other hand, that the oral announcement referred to by appellants, which was delivered to appellants’ counsel by voicemail, is not a part of the appellate record and stress that no formal order of recusal was ever signed by the probate judge.

Rule 18b of the Texas Rules of Civil Procedure sets forth the grounds for disqualification and recusal of judges.  
Tex. R. Civ. P. 
18b.  The provision states, in relevant part:

(2) 
Recusal

A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned; 

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. 

Tex. R. Civ. P.
 18b(2)(a)-(b)
. 
 The rule further provides that “[t]he parties to a proceeding may waive any ground for recusal after it is fully disclosed on the record.”
  Tex. R. Civ. P.
 18b(5). 
 Rule 18a(c) states: 

If the judge recuses himself, he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit, and shall make no further orders and shall take no further action in the case except for good cause stated in the order in which such action is taken.  

Tex. R. Civ. P. 
18a(c).

Appellants assert that the probate judge orally recused himself in a recorded voicemail message sent to appellants’ counsel on September 5, 2001, the same day that appellants filed petitions for writ of mandamus in an effort to compel the probate judge to issue a ruling on the parties’ competing summary judgment motions.  The text of that voicemail message was included in the appendices of appellants’ supplemental mandamus petitions and is quoted in appellants’ briefs in their direct appeals.  In addition, a tape recording of the message, sworn to by appellants’ counsel, was tendered with the mandamus records.  While we recognize that this court may take judicial notice of its records in the mandamus proceedings,
(footnote: 3) either the text of the message or the tape recording must also have been made a part of the trial court record.
(footnote: 4) 
 
Tex. R. App. P.
 52.3(j)(1)(A), (2), 52.7(a)(1) (requiring documents submitted with original proceeding to have been filed in the underlying proceeding); 
In re Houseman
, 66 S.W.3d 368, 373 (Tex. App.—Beaumont 2001, orig. proceeding).  Appellants never attempted to offer either the recording or the text of the message into evidence at the trial court, and neither is included in the trial court record.
(footnote: 5)  Thus, we would not have been able to consider them in the mandamus proceedings because they were not filed in the underlying proceeding.  
Tex. R. App. P.
 52.7(a)(1); 
see Humphreys v. Caldwell
, 881 S.W.2d 940, 943 (Tex. App.—Corpus Christi 1994, orig. proceeding) (refusing to consider, under predecessor to rule 52.7(a)(1)
, copies of exhibits filed in original proceeding because affidavit accompanying copies stated that some had been filed with trial court and some had been sent to opposing counsel and did not identify which had been filed with trial court),
 mand. granted in part on other grounds
, 888 S.W.2d 469 (Tex. 1994); 
cf. In re Bledsoe
, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding) (holding that oral order of trial court may be considered in mandamus action 
if it is adequately shown by the trial court record
); 
In re Perritt
, 973 S.W.2d 776, 779 (Tex. App.—Texarkana 1998, orig. proceeding) 
(holding that appellate court may consider oral ruling of trial court in mandamus action 
if it is adequately shown by the reporter’s record
).  
Accordingly, we will not review the content of the probate judge’s statement to appellants’ counsel.

Other evidence contained in the trial court record, however, confirms that the probate judge did make an oral statement recusing himself from this case before ruling on the parties’ motions for summary judgment.  The clerk’s record contains a September 10, 2001 letter from the probate judge to the parties’ attorneys, which states that “[o]n further consideration, 
the Court hereby rescinds its sua sponte oral recusal of September 5, 2001
.”  [Emphasis added.]  Thereafter, the letter sets forth the probate court’s rulings on the parties’ summary judgment motions and offers the reasoning behind those rulings.  Thus, the only evidence in the trial court record reflecting the probate judge’s oral recusal also demonstrates that the probate judge expressly rescinded his statement before ruling upon the parties’ motions.  Furthermore, the trial court record does not reflect that the probate judge entered an order of recusal or requested that another judge be assigned to the case as required by rule 18a.

Relying upon 
Dunn v. County of Dallas
, appellants claim that the probate judge’s oral statement in this case was a clear and unequivocal act of the probate court, constituting an irrevocable recusal, and submit that the absence of a formal order of recusal had no effect upon the validity of the action.  794 S.W.2d 560, 562 (Tex. App.—Dallas 1990, no writ).  As appellees point out in their brief, however, the facts surrounding the probate judge’s recusal in 
Dunn
 are distinguishable from the present case.  In 
Dunn
, the trial judge sent a letter to the presiding judge of the administrative district voluntarily recusing himself from a case and requesting the assignment of a different judge.  
Id.
 at 561.  Copies of the letter were sent to all attorneys of record.  
Id.
  No further action was taken on the letter, no order of recusal was entered, and the original judge continued to preside over the cause, eventually granting summary judgment.  
Id.
  On appeal, the 
Dunn
 court held that the trial judge’s letter was a valid and effective order of recusal, which divested the trial judge of the power to enter the summary judgment.  
Id.
 at 562-63.  The court specifically pointed out that “[n]o other order rescinding, modifying, or otherwise changing this recusal order is in the record.”  
Id.

In the present case, on the other hand, the sole evidence in the trial court record that any act of recusal occurred is inextricably combined with an express statement by the probate judge rescinding that action.  Nothing in the trial court record suggests that appellants objected to the probate judge’s rescission of his oral recusal.  In addition, the trial court record contains no written motion for recusal, which appellants could conceivably have filed following receipt of the probate judge’s September 10
 letter.  
See
 
Tex. R. Civ. P. 
18a(a) (authorizing “any party” to file a motion stating reasons why the judge before whom a case is pending should be removed).  Moreover, our examination of the trial court record reveals no facts indicating bias, prejudice, or any other cause to reasonably question the impartiality of the probate judge in this case.  Because the probate judge affirmatively retracted his oral recusal and appellants took no steps to secure his subsequent removal from the case pursuant to rule 18a, we hold that appellants have waived the issue of recusal on appeal.  
See In re Union Pac. Res. Co.
, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding) (recognizing that, unlike constitutional grounds for disqualification, grounds for recusal of a trial judge can be waived if not raised by proper motion).  Accordingly, we overrule appellants’ first issue.

IV.  
Propriety of Summary Judgment for Adopted Great-Grandchildren

In their second and third issues, appellants complain that the trial court erred by granting appellees’ motions for partial summary judgment and denying appellants' motions for summary judgment.  
Appellants argue that the language of the Roeser and Pavelic trusts shows an intent to exclude adopted great-grandchildren as beneficiaries.  Appellees argue, however, that the trusts clearly show an intent to include them as beneficiaries.

Questions of law are appropriate matters for summary judgment.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 222 (Tex. 1999).  
Absent ambiguity, the construction of a will is a matter of law. 
 Penland v. Agnich
, 940 S.W.2d 324, 326 (Tex. App.—Dallas 1997, writ denied).  We review such questions of law de novo.  
Natividad v. Alexsis, Inc
., 875 S.W.2d 695, 699 (Tex. 1994).
  Here, both parties agree that the will is unambiguous, as evidenced by their opposing motions for summary judgment.  
See Sharp v. Broadway
 
Nat'l Bank
, 761 S.W.2d 141, 144 (Tex. App.—San Antonio 1988),
 aff'd as modified on other grounds
, 784 S.W.2d 669 (Tex. 1990) (per curiam). 

 
When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 605 (Tex. 2002).  The reviewing court should render the judgment that the trial court should have rendered.
(footnote: 6)  
Id
.

A.  Roeser Trusts

In “Codicil No. 1 to Last Will Dated February 19, 1947 of Chas. F. Roeser,” Roeser created three separate trusts: one for Pavelic, the second for his daughter Emily, and the third for his other daughter Ellen.  Roeser created a power of appointment in Pavelic’s trust and stated that if she did not name and appoint those who should gain the balance of the corpus and undistributed income, then the trustee shall pay:

[O]ne-half (½) of the net income of the trust to my daughter, Emily Roeser, if then living, if not, in equal shares, to the 
children born of her body
; 
the children, and their heirs, of any deceased child of her body to be entitled to their parent’s portion
 per stirpes; and if there be none such to take and receive the one-half (½) share of the net income of the trust, going to Emily Roeser, then her said one-half (½) share in said net income shall go and be paid to her sister, Ellen Roeser, if then living, if not, to the children born of her body; the children, and their heirs, of any deceased child of her body to be entitled to their parent’s portion per stirpes.  [Emphasis added.]

The provision creating Ellen’s trust contains identical language as Emily’s trust, but where “Emily” is used, the name “Ellen” is substituted and vice versa.
 Our primary inquiry in interpreting a will is to determine the intent of the testator.  
Gee v. Read
, 606 S.W.2d 677, 680 (Tex. 1980).  If the will itself is unambiguous, courts should not go beyond its specific terms in search of the testator’s intent. 
 
Penland
, 940 S.W.2d at 326.  We apply the law as it existed at the time the will was executed.  
Id
.  

In this case, the applicable law was the 1931 adoption statute.
(footnote: 7)  
 The law in effect at the time presumed that adopted children do not take under a will executed by a third person unless the will discloses a contrary intent.  
See Cutrer v. Cutrer
, 345 S.W.2d 513, 516-17 (Tex. 1961).  As the supreme court in 
Cutrer
 made clear, the 1931 adoption statute’s presumption against including adopted children applied only if other language or circumstances of the will did not indicate a contrary intent.  
Id
. at 515; 
Penland
, 940 S.W.2d at 326.  The key question is not whether adopted persons have a right to take under the law, but whom the testator intended to share in his estate.  
Sharp
, 761 S.W.2d at 144.  If Roeser’s trust discloses an intent contrary to the presumption of the 1931 adoption statute, that intent controls.  The court may not “add to, subtract from, amend, correct, reform, revise, or rewrite the will even if the court might think that the testator was unreasonable, unjust or unwise in bequeathing and devising his property as he did.”  
Sanderson v. First Nat’l Bank
, 446 S.W.2d 720, 723 (Tex. Civ. App.—Dallas 1969, writ ref’d n.r.e.).

Here, Roeser specifically stated in Emily’s and Ellen’s trusts that “children born of her body” were to receive equal shares of the trust.  It is well settled that such language is construed to exclude adopted persons from benefitting under a will or trust.  
See Nail v. Thompson
, 806 S.W.2d 599, 600 (Tex. App.—Fort Worth 1991, no writ); 
see also Cutrer
, 345 S.W.2d at 515 (holding that an adopted child is not entitled to property conveyed or devised to the children of the adoptive parent);
 Vaughn v. Vaughn
, 337 S.W.2d 793, 797 (Tex. 1960) (stating that use of the word “born” renders it most improbable that the testator was referring to children born to strangers)
; Murphy v. Slaton
, 273 S.W.2d 588, 597 (Tex. 1954) (holding that child, children, or descendants of any child or children did not include adopted children)
.  

The next clause in the trusts states that “the children, and their heirs, of any deceased child of her body [are] entitled to their parent’s portion per stirpes.”  Although Roeser created a limitation that only children “of the body” of Emily and Ellen (Roeser’s grandchildren) could receive income and corpus from trusts, this limitation does not extend
 to their grandchildren (Roeser’s great-grandchildren), as demonstrated by the removal of the “of the body” language in the second clause.  Because this language discloses an intent contrary to the presumption of the 1931 adoption statute, it controls.  Furthermore, it must be assumed that Roeser knew the presumption under the 1931 statute and the cases construing it, which excluded adopted children unless the will or trust included contrary language.  
See Cutrer
, 345 S.W.2d at 517 (stating that if the statute is to be given any weight on the theory of presumed knowledge of the law, it must be assumed that the parties knew of its limited application).  

Including the “of the body" language in the first clause, but deleting it from the following clause indicates that Roeser intended to include adopted great-grandchildren.  Although appellants argue that it is simply not logical to assume that Roeser would exclude adopted grandchildren but include adopted great-grandchildren, we cannot redraft wills to add provisions “under the guise of construction” to reach a presumed intent.  
San Antonio Area Found. v. Lang
, 35 S.W.3d 636, 639 (Tex. 2000); 
see also
 
Sanderson
, 446 S.W.2d at 723 (stating that courts may not rewrite the will even if the court thinks that the testator was unreasonable, unjust, or unwise in bequeathing and devising his property as he did).

Appellants rely on this court’s decision in 
Nail v. Thompson
 in which we held that the word “born” precluded adopted beneficiaries from inheriting from  the immediate heirs as well as their descendants. 
 806 S.W.2d at 601.  The facts in 
Nail
, however, are distinguishable.  In 
Nail
, the trust language stated that the assets should be delivered to “the lawful heirs (or descendants of same), if there be any then living, 
born of the body 
of my [named sibling or in-law]; said . . . share[s] to be divided and to be distributed to such
 lawful heirs
 (or descendants of same), per stirpes.” 
 Id
. at 600.  We determined that the “born of the body” language excluded adopted persons.  
Id
.  The testator’s intent to exclude adopted persons was made even clearer by use of the term “lawful heirs (or descendants)” because the law in effect at the time did not allow adopted children to inherit through their parents; therefore, an adopted person was not a lawful heir.  
Id
. at 601.  Here, Roeser does not use the same language for the various classes and generations of beneficiaries that  was used in 
Nail
.  Furthermore, 
Nail
 did not create a rule of exclusion of all future generation adopted children regardless of the testator’s use of contrary testamentary language; it simply applied unambiguous terms clearly showing the testator’s intent for that will. 

B.  Pavelic Trusts

Under article four, section 3 of Pavelic’s will, Pavelic established a separate trust for the benefit of each grandchild living at her death.  She defined “grandchild” or “grandchildren” as “children born . . . to my two daughters, Emily Roeser Parker and Ellen Roeser Brants.” 
 Upon termination of each trust, the assets would be distributed to the grandchild for whom the trust was created.  If a grandchild for whom a trust was created died before termination of the trust and was survived by any descendants, the trust assets would pass to the descendants who were living at the date of termination.  In the will, “descendants” and “descendant” are defined as “the lawful issue of a deceased person in the line of descent and shall not be construed to include the issue of a parent in the line of descent who is living at the time in question.”
(footnote: 8)
 In a codicil, Pavelic also established a trust for her husband that would terminate upon his death.  Upon termination, the assets of the trust would be distributed according to article four of the will, if the Pavelic trusts still existed. If the Pavelic trusts did not exist, the assets would pass free of trust to Emily, Ellen, and their descendants.  According to the codicil, “'[D]escendants' as used in this Section shall mean any 
natural born child or children
 in the line of descent of a deceased parent.”  [Emphasis added.]

In will construction,
 we apply the law as it existed at the time the will was executed.  
Penland
, 940 S.W.2d at 326.  Pavelic’s will is controlled by the 1951 adoption statute, which stated:

[A] child shall . . . be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though naturally born to them in lawful wedlock . . . . Such adopted child shall be regarded as a child of the parent or parents by adoption for all other purposes as well, except that where a deed, will, or other instrument uses words clearly intended to exclude children by adoption, such adopted child shall not be included in such class.

See
 Act of May 7, 1951, 52
nd
 Leg., R.S., ch. 249, 1951 Tex. Gen. Laws 1388, 390, 
amended
 1973, 1977, 1987, 1989, 1991, 
repealed and recodified by
 Act of April 6, 1995, 74
th
 Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 221, 282 (current version at 
Tex. Fam. Code Ann
. § 162.017 (Vernon 2002)).

(stating that the terms “child,” “descendant,” or “issue,” and other terms indicating the relationship of parent and child include an adopted child unless the context or express language clearly indicates otherwise).  Thus, the statutory presumption was that adopted children were included as beneficiaries unless words clearly indicated that they were excluded.   
See Vaughn
, 337 S.W.2d at 796.  

Appellants first argue that a testator’s use of language of exclusion in one section of a will is effective as to the entire will.  They argue that “descendants,” as defined in article three-A, section three of the codicil, should control the whole document.  The codicil states that “'descendants' as used in this Section shall mean any natural born child or children in the line of descent of a deceased parent.”

Appellants rely on 
Sharp v. Broadway National Bank
, in which the appellants argued that because two will provisions did not specifically exclude adopted children, they were entitled to receive the benefits of the trust.  761 S.W.2d at 143.  The court upheld the trial court’s decision to exclude adopted children based on the language in another provision of the will, in which the testator expressly stated that he wanted “relatives of the whole blood and/or their issue [to] receive the greatest benefit . . . and not any strangers, or relatives of the half blood, or their issue.”  
Id
. at 143-45.

Here, Pavelic’s will does not contain such strong language to show an intent to exclude adopted great-grandchildren.  Furthermore, we believe that 
Hagaman v. Morgan
 settles the issue of whether the use of exclusion language in one section of a will is effective as to the entire will
.  886 S.W.2d 398 (Tex. App.—Dallas 1994, writ denied).  The will dispute in 
Hagaman
 centered around two provisions.  One provision determined how a life estate would be devised if any of the testatrix’s children predeceased her and specifically discussed an adopted  grandchild.  The second provision stated, “Upon termination of the life estate of each of my children, I give, devise, and bequeath the remainder thereof to that child’s bodily issue, share and share alike, or their bodily issue in their stead, per stirpes.”  
Id
. at 399.  Because the testatrix’s four children survived, the provision discussing the adopted grandchild never applied.  
Id
. at 400.  Although the appellants tried to argue that the testatrix intended to limit the devise to blood relatives because she mentioned the adopted grandchild in one provision and not the other, the court disagreed.  
Id
. at 402.  The court held that it did not even reach the provision concerning the adopted grandchild because all of the testatrix’s children were living at her death; therefore, the provision never became effective.  
Id
.  The provision providing for the life estate to go to her children’s “bodily issue” controlled.  
Id
.  Because the court held that terms such as “bodily issue” included adopted children under the 1951 adoption statute, the adopted grandchild was a beneficiary under the will.  
Id
.   Here, appellants are also relying on a definition from an article of Pavelic’s will that never became effective.
(footnote: 9)  The article applied only if Pavelic’s husband died and his trust, along with the Pavelic trusts, had been terminated.  Here, the Pavelic trust did not terminate before his death.  Therefore, the trust assets were disposed of under the terms of the Pavelic trust created in article four.  Similar to the 
Hagaman
 court, we do not reach the question of whether the article three-A provision controls because it never became effective.  Accordingly, we do not construe the definition of “descendants” as used in that article to apply to the entire will.
(footnote: 10)  

We now focus on the definition of “descendants” as used in article five, section six.  “Descendants” and “descendant” are defined as “the lawful issue of a deceased parent in the line of descent and shall not be construed to include the issue of a person in the line of descent who is living at the time in question.”  As previously
 mentioned, the presumption of the 1951 statute provided adopted children a status equivalent to natural children for inheritance purposes unless a will specifically excluded them.  
See Sharp
, 761 S.W.2d at 144.  Thus, appellees are presumed beneficiaries under the Pavelic trust unless the will contains specific language showing a contrary intent.  

Although when Pavelic created the separate trusts for her grandchildren she provided a limitation that grandchild or grandchildren means "children born . . . to my two daughters, Emily Roeser Parker and Ellen Roeser Brants,” she did not include this limitation as to those who may take under the trusts if a grandchild was deceased.  She simply stated that the property should pass to the living descendants, which are defined as “lawful issue.”  By choosing the term “lawful issue,” Pavelic specifically rejected other terms, such as “born” and “of the body,” that have commonly been construed to exclude adopted persons.  
See Penland
, 940 S.W.2d at 327; 
see also Ortega v. First RepublicBank Fort Worth
, 792 S.W.2d 452, 454 (Tex. 1990) (op. on reh’g) (holding that “any other great-grandchildren who may be born after my death” excluded adopted children); 
Nail
, 806 S.W.2d at 601 (holding that “lawful heirs . . . born of the body” excluded adopted children).  We conclude that Pavelic’s use of “lawful” to modify “issue” indicates her intention to include all persons who became “issue” by any legal process, including adoption.  
See Penland
, 940 S.W.2d at 327.  Thus, appellees are beneficiaries under the Pavelic trust. 

Because appellees are beneficiaries under the Roeser and Pavelic trusts, we hold the probate court did not err in granting appellees’ motions for summary judgment.  Accordingly, we affirm the probate court’s partial summary judgments in favor of appellees.
(footnote: 11) 

V.  Conclusion

Having overruled all of appellants’ issues, we affirm the trial court’s judgments.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DELIVERED: February 5, 2004

FOOTNOTES
1:
Probate court cause number 83-1196-1 was assigned to the action concerning the will of Maxine Shannon Pavelic (now appellate court cause no. 2-02-312-CV); probate court cause number 49-20098-1 was assigned to the action concerning the will of Charles F. Roeser (now appellate court cause no. 2-02-313-CV).  The cases have been consolidated on appeal.

2:
Patrick Allison Parker is not a party to this appeal.

3:
See, e.g., In re Y.M.A.
, 111 S.W.3d 790, 791-92 (Tex. App.—Fort Worth 2003, no pet.). 

4:
Following the probate judge’s September 10
 letter ruling on the parties’ motions for summary judgment, this court denied appellants’ petitions for writ of mandamus as moot.  
In re Parker
, Nos. 02-01-280-CV, 02-01-281-CV (Tex. App.—Fort Worth Sept. 14, 2001) (orig. proceeding) (not designated for publication).

5:
For example, the trial court’s oral announcement of recusal could have been presented perhaps at a hearing on a recusal motion or a hearing on a motion for new trial.

6:
Appellants argue that appellees failed to file a response or object to any part of their summary judgment motions; therefore, all of their evidence is taken as true, and they are entitled to summary judgment.  As the appellees correctly argue, however, the Texas Supreme Court has held that when parties file cross- motions for summary judgment, the trial court should treat one cross motion as a reply to the other cross-motion.  
See
 
DeBord v. Muller
, 446 S.W.2d 299, 301 (Tex. 1969) (holding that because both summary judgment motions were properly before the court at the time judgment was rendered, all the evidence accompanying defendant's motion for summary judgment was likewise evidence to be considered in deciding plaintiff's motion and vice versa).  Thus, all legal arguments were properly presented to the probate court in the motions for summary judgment.

7:
See
 Act of May 21, 1931, 42
nd
 Leg., R.S., ch. 177, § 9, 1931 Tex. Gen. Laws 300, 302, 
amended
 1951, 1973, 1977, 1987, 1989, 1991, 
repealed and recodified by
 Act of April 6, 1995, 74
th
 Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 221, 282 (current version at 
Tex. Fam. Code Ann
. § 162.017 (Vernon 2002)).

8:
When Pavelic died in 1983, a trust was created for Earle Whitney Parker as required under article four, section three.  When Earle died in 1998, he was survived by appellees, his two adopted children.

9:
Article three-A of the “Third Codicil to the Last Will and Testament of Maxine Shannon Pavelic” states that “'[D]escendants' as used in this Section shall mean any natural born child or children in the line of descent of a deceased parent.”

10:
Furthermore, the definition in article three-A specifically states that it applies  only to that section of the will.

11:
Appellants argue that 
Ortega
, 
Vaughn
, and 
Nail
 are controlling because these cases hold that use of the word “born” shows the testator’s intent to exclude adopted children from taking under a will.  
Ortega
, 792 S.W.2d at 454; 
Vaughn
, 337 S.W.2d at 798; 
Nail
, 806 S.W.2d at 601.  This argument, however, ignores the different wording used in the Pavelic will to define “grandchildren” and “descendants” as those terms relate to the trusts.  Pavelic specifically omitted the term “born” in defining “descendants” and used a term that includes adopted children.  
See Penland
, 940 S.W.2d at 327 (holding that “lawful issue” indicates a testator’s intent to include adopted children).