COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-055-CV

 

JOHN BENJAMIN CLOPTON, JR.,                                         APPELLANTS

INDIVIDUALLY,
BARBARA ANN CLOPTON,

INDIVIDUALLY,
AND JOHN BENJAMIN CLOPTON, JR.

AND
BARBARA ANN CLOPTON AS THE HEIRS

OF
THE ESTATE OF DAVID WAYNE CLOPTON, DECEASED

 

                                                   V.

 

AIRPORT MARINA HOTEL, INC. A/K/A HYATT                          APPELLEES

EAST
REGENCY DFW, DALLAS/FORT WORTH 

INTERNATIONAL
AIRPORT BOARD, DFW AIRPORT 

HOTEL
ASSOCIATES, BEAR CREEK DFW ASSOCIATES, 

LTD.,
HYATT CORPORATION, ROBERT FRANKLIN MCMILLAN,

MARIE
MCMILLAN, AND MARCUS J. BUSCH

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In one multifarious issue,
appellants complain of the trial court=s failure to grant their motion for new trial based upon new
evidence.  We affirm the trial court=s judgment.








                                       Factual Background

Appellants John and Barbara
Clopton, individually and as heirs of the estate of their son, David Wayne
Clopton, sued appellees Airport Marina Hotel, Inc. a/k/a Hyatt East Regency
DFW, Dallas/Fort Worth International Airport Board (the ABoard@), DFW Airport
Hotel Associates, Bear Creek DFW Associates, Ltd., and Hyatt Corporation
(together, the Acorporate
appellees@), and
Robert Franklin McMillan, Marie McMillan, and Marcus J. Busch, after David died
while leaving a New Year=s Eve party
being held at the Airport Marina Hotel. 
David, who was intoxicated, attempted to cross a busy road, and appellee
Robert McMillan struck and killed him. 
Appellants sued the corporate appellees under theories of negligence and
violations of the Dram Shop Act. 
Appellants sued the McMillans under theories of negligence.  Appellee Marcus J. Busch is appellants= former attorney in this case, who intervened to assert an attorney=s fee lien against appellants. 
Appellants represented themselves pro se in the trial court proceedings
below after they terminated Busch=s representation of them.

                                     Procedural Background

Appellee Marie McMillan, a
passenger in the car her husband was driving, moved for summary judgment, which
the trial court granted on April 24, 2003, thereby disposing of all claims
against her.








The Board filed a motion to
dismiss for lack of subject matter jurisdiction, which the trial court heard on
June 12, 2003.  Also on that date, the
trial court heard summary judgment motions filed by all of the corporate
appellees.  The trial court granted the
plea to the jurisdiction, but denied the motions for summary judgment, on June
13, 2003. 

The remaining causes of
action were scheduled to go to trial on June 16, 2003 in the 141st Judicial
District Court, the Honorable Len Wade presiding. Before trial, on May 9, 2001,
the trial court granted appellants= and Busch=s agreed
motion to withdraw as counsel for appellants.[2]  On the morning of trial, June 16, 2003,
appellee Robert McMillan appeared, but appellants told the trial court that
they had reached a settlement with all the remaining corporate appellees and
that a rule 11 agreement had been signed the previous day.  See Tex.
R. Civ. P. 11.  Appellants further announced that they had
nonsuited Robert McMillan.  They filed a
written notice of nonsuit as to both of the McMillans that same day, June 16,
2003. 








A few days later, on June 20,
appellants filed a pro se motion to revoke the settlement agreement.  They claimed they had been Avictims of duress, coercion, fraud and gross misconduct.@  The corporate appellees then
filed a motion to enforce the settlement agreement along with a traditional
motion for summary judgment, on June 27, 2003.

Appellants then filed
additional responsive pleadings demanding a jury trial and setting forth
affirmative defenses to the enforcement of the settlement agreement based
primarily on fraud.  Appellants alleged
that the corporate appellees had found out what the court=s ruling would be on the Board=s plea to the court=s jurisdiction on or about June 15, 2003, without disclosing this
information to appellants, and while negotiations on settlement were taking
place.  Appellants contend that the court=s letter ruling dated June 13, 2003Cthe day after the plea to the jurisdiction hearingCwas faxed or sent to the appellees but not to appellants.  Appellants claimed they did not receive Judge
Wade=s Friday, June 13, 2003 letter ruling until June 19, 2003 even though
trial was scheduled to begin Monday, June 16, 2003.

After appellants alleged that
they did not receive the trial court=s ruling on the Board=s plea to the jurisdiction in a timely manner, Judge Wade recused
himself on August 29, 2003.  The
presiding judge of the judicial region, the Honorable Jeff Walker, then
transferred the case to the 236th Judicial District Court, the Honorable Tom
Lowe presiding, on September 3, 2003.








On Friday, October 10, 2003,
Judge Lowe heard appellees= AMotion to
Enforce Settlement Agreement and Traditional Motion for Summary Judgment (on
breach of contract).@  Judge Lowe determined that corporate
appellees had Aestablished
the existence of a valid Rule 11 Agreement settling all claims in dispute
between the [appellants] and the [corporate appellees], subject only to the
[appellants=] ability to
establish any of the affirmative defenses set out in its Notice of Revocation
of Settlement.@  Judge Lowe=s order is dated March 4, 2004.

On May 25, 2004, appellants
moved to set aside their voluntary nonsuit of appellees Robert and Marie
McMillan.  After a hearing on August 19,
2004, the trial court denied appellants= motion to set aside their nonsuit and ordered both McMillans
dismissed from the suit.  On July 14,
2004, appellants moved for summary judgment on their claim of breach of the
settlement agreement, which was never ruled on by the trial court. 

In the interim, in July 2003,
appellants had filed an accelerated appeal with this court challenging the
trial court=s order
granting the Board=s plea to the
jurisdiction.  We dismissed that appeal
for want of jurisdiction on October 16, 2003.[3]








On November 8, 2004, the
trial court granted the corporate appellees= traditional motion for summary judgment and entered a final judgment
as to all claims and parties.  And,
again, the trial court, by another written order, denied appellants= motion to set aside the voluntary nonsuit and reinstate as to the
McMillans.








On December 7, 2004,
appellants filed a motion for new trial, but before the motion was heard,
appellants filed a motion to recuse Judge Lowe. 
On December 10, 2004, Judge Lowe signed an order of recusal.  On December 21, 2004, Judge Walker, the
presiding judge, signed an order transferring the case to his court, the 96th
Judicial District Court.  Appellants
obtained a setting for January 18, 2005, in that court on their motion for new
trial.  However, once again, on January
7, 2005, appellants filed a motion to recuse Judge Walker before the January
18, 2005 hearing date.  This last
recusal motion resulted in the necessary cancellation of the January 18 motion
for new trial hearing that was scheduled to be heard by Judge Walker.  During this same approximate time period,
appellants also filed a motion for emergency relief and a petition for writ of
mandamus in the Supreme Court of Texas, both of which were denied on January
19, 2005.  The motion for new trial was
therefore not heard and was overruled by operation of law.  This appeal followed.

                                         Issues on Appeal

Appellants= sole issue on appeal is multifarious, and this court is not required
to review it.  See Tex. R. App. P. 38.9; Maida v. Fire
Ins. Exch., 990 S.W.2d 836, 839 (Tex. App.CFort Worth 1999, no pet.). 
Their issue states, 

Whether
the Trial Court erred and abused its discretion in its actions/inactions
regarding APPELLANTS=
verified (sworn) uncontroverted Motion For New Trial (which contained a point
for Newly Discovered Evidence), which resulted in the motion being overruled by
operation of law on January 22, 2005, resulting in injustice and unfairness to
the APPELLANTS because the Trial Court should have granted APPELLANTS a new
trial?

 

                                             Discussion

To the extent appellants= primary complaint is directed to the trial court=s failure to grant their new trial, appellants= own actions resulted in the error of which they now complain; by
virtue of filing a motion to recuse Judge Walker, the 96th District Court
Judge, the judge in front of whom their motion for new trial was then pending,
Judge Walker was prohibited from hearing the motion until after a
recusal hearing could take place.  See
Tex. R. Civ. P. 18a(c).








Rule 18a(c) states, APrior to any further proceedings in the case, the judge shall either
recuse himself or request the presiding judge of the administrative judicial
district to assign a judge to hear such motion.@  Id.  Thus, the very action of which appellants
complain was invited by the very action they took.  It has long been held that a party cannot
complain on appeal about an alleged error which that party invited or asked the
court to take, Aa doctrine
commonly referred to as >the invited
error= doctrine.@  Tittizer v. Union Gas Corp., 171
S.W.3d 857, 862 (Tex. 2005); cf. Rogers v. Bradley, 909 S.W.2d 872,
879-80 (Tex. 1995) (Enoch, J., dissenting to Gammage, J.=s, declaration of recusal) (explaining decision declining to recuse,
noting that no constitutional or rule-based grounds for recusal existed and
emphasizing that it is judge=s conduct, not conduct of third party, that is critical in determining
whether to recuse); Carmody v. State Farm Lloyds, 184 S.W.3d 419, 421-22
(Tex. App.CDallas 2006,
no pet.) (holding that trial judge=s denial of recusal motion without first referring matter to presiding
judge of administrative judicial district was proper when motion for recusal
was made after hearing had already begun and trial court had made rulings
unfavorable to movants); Parker v. Parker, 131 S.W.3d 524, 528
(Tex. App.CFort Worth
2004, pet. denied) (op. on reh=g) (holding grounds for recusal can be waived).








Appellants had filed their
motion for new trial and even had the hearing on their motion already set when
they filed their motion to recuse Judge Walker on January 7, 2005.  Judge Walker declined to recuse himself on
January 18, 2005, and requested the Chief Justice of the Texas Supreme Court to
assign a judge to hear appellants= recusal motion.  On February
10, 2005, Chief Justice Wallace Jefferson assigned Judge Quay F. Parker to hear
appellants= recusal
motion.  The recusal hearing took place
on February 24, 2005 and was denied. 
Appellants do not challenge the denial of their motion to recuse Judge
Walker; they only challenge the denial of their motion for new trial.  However, we must look at the consequences the
filing of their motion to recuse Judge Walker had on their motion for new
trial.  See Parker, 131 S.W.3d at
529-30 (holding grounds for recusal can be waived).








When a challenged judge
declines to recuse himself or herself, the rules of civil procedure prohibit
that judge from taking any further action in the case until a hearing has been
held on the party=s recusal
motion.  Tex. R. Civ. P. 18a(d). 
The presiding judge of the appropriate judicial administrative region is
required to immediately set the recusal hearing before himself or Asome other judge designated by him.@  Id.  But because appellants challenged the
presiding judge of the region, Judge Walker requested the Chief Justice of the
Texas Supreme Court to appoint another judge to hear the recusal motion.  See id.; see also Tex. R. Civ. P. 18a(g) (allowing Chief
Justice of the Supreme Court to appoint and assign judges in conformity with
this rule and pursuant to statute); see also Tex. Gov=t Code Ann. '' 74.049, 74.056, 74.057, 74.059(c), 75.002 (Vernon 2005).  Section 74.049(3) specifically authorizes the
Chief Justice to make assignments within a judicial region and Aperform the other duties of a presiding judge . . . in a particular
matter in which the presiding judge disqualifies himself from performing the
duties of presiding judge in that matter.@  Tex. Gov=t Code Ann. ' 74.049(3); see also id.
' 74.057(a) (authorizing Chief Justice to assign judges of one or more
administrative regions for service in other administrative regions when
necessary to the prompt and efficient administration of justice).  By the time of the recusal hearing, the time
for hearing appellants= motion for
new trial had expired, and it was overruled as a matter of law.  See Tex.
R. Civ. P. 329b(c), (e).

Appellants created their own
predicament and under the invited error doctrine cannot complain on appeal
about the denial of their motion for new trial because their request for another
recusal in this matter of the newly assigned judge to hear the motion was the
very reason their new trial motion was not heard timely.  To the extent appellants= issue challenges the trial court=s denial of their motion for new trial, it is overruled.  To the extent they make numerous other
complaints and arguments contained within this same issue, they are overruled
as multifarious.  See Fredonia State
Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Columbia
Med. Ctr. of Las Colinas v. Bush, 122 S.W.3d 835, 841 n.1 (Tex. App.CFort Worth 2003, pet. denied).








Additionally, appellants= sole issue on appeal includes an attack on the trial court=s dismissal with prejudice of appellee Busch=s suit in intervention. 
However, appellants do not direct this court to any trial court error
regarding the dismissal; appellants only state that they did not agree to the Asubstance or form@ of the trial court=s order of dismissal. 
Regardless, we also agree that Busch had the right to unilaterally
dismiss his claim against appellants at any time, so long as the opposing party
had not made a claim for affirmative relief against him.  See Tex.
R. Civ. P. 162; BHP Petroleum Co. v. Millard, 800 S.W.2d 838,
840-41 (Tex. 1990) (orig. proceeding); Moseley v. Behringer, 184 S.W.3d
829, 832 (Tex. App.CFort Worth
2006, no pet.).  Without a request for
affirmative relief, it is a trial court=s ministerial duty to grant such a dismissal.  Hooks v. Fourth Court of Appeals, 808
S.W.2d 56, 59 (Tex. 1991) (orig. proceeding).

Further, to the extent that
appellants now more specifically claim they did not receive notice of the Busch
dismissal in accordance with Tarrant County Local Rule 3.06(e), that complaint
has also been waived by failure to assert it in the trial court.  See Tex.
R. App. P. 33.1; Tarrant (Tex.)
Civ. Dist. Ct. Loc. R. 3.06(e).

 

 








                                             Conclusion

Having overruled appellants= sole issue on appeal, we affirm the judgment of the trial court.

 

 

PER CURIAM

 

PANEL A:   LIVINGSTON, J.; CAYCE, C.J.; and GARDNER, J.

 

DELIVERED:
August 10, 2006











[1]See Tex. R. App. P. 47.4.





[2]On
June 18, 2003, attorney Busch filed a plea in intervention for his unpaid
attorney=s
fees.

 





[3]Clopton
v. Dallas/Fort Worth Int=l Airport Bd., No.
02-03-00194-CV, 2003 WL 22351854 (Tex. App.CFort Worth Oct. 16, 2003, no
pet.) (mem. op.).